IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARTHA FOX,

      Plaintiff,

      v.

PITTSBURG STATE UNIVERSITY,

      Defendant.

Case No. 14-CV-2606-JAR-KGG

## MEMORANDUM AND ORDER

At the close of Plaintiff Martha Fox's case, and again at the close of all evidence, Defendant Pittsburg State University ("PSU") moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) orally and in writing (Docs. 185, 186, 187, 188, 190). The Court took these motions under advisement. As explained more fully below, the Court denies the motions.

Under Rule 50(a)(1), a court may grant judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." A moving party "is entitled to a judgment if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[1] "The question is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could properly find for that party."[2] This standard is particularly strict where the moving party bears the burden of proof at trial: "a directed verdict for the party having the burden of proof may be granted only where he has established his case by evidence that the jury

---

[1] *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000) (internal quotations and citations omitted).

[2] *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 685 (10th Cir. 2007).

1

would not be at liberty to disbelieve."[3]  In considering a motion for judgment as a matter of law, the court reviews all of the evidence in the record and construes it in the light most favorable to the nonmoving party.[4]  But the court must refrain from making credibility determinations and weighing the evidence.[5]  "The jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."[6]

Defendant argues that there was insufficient evidence at trial to support Plaintiff's verdict under Title IX for the following reasons: (1) Plaintiff has no private right of action under Title IX because Title IX is inapplicable to an allegation of sexual harassment by one university employee against another; (2) Plaintiff failed to prove Defendant had actual notice given to an appropriate person prior to February 2014; and (3) Plaintiff failed to prove Defendant acted unreasonably or with deliberate indifference when it did receive notice.

The Court rejects each of these arguments.  Plaintiff does have a private right of action under Title IX.  Defendant cites the standard articulated in *Davis v. Monroe County Board of Education*[7] and adopted by the Tenth Circuit, stating that the harassment must be "said to deprive the victims of access to the educational opportunities or benefits provided by the school."[8]  Defendant argues that this standard proves that Title IX is inapplicable to allegations of sexual harassment by one university employee against another university employee because there is no

---

[3] *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996) (quoting *Hurd v. Am. Hoist & Derrick Co.*, 734 F.2d 495, 499 (10th Cir. 1984)).

[4] *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *Deters*, 202 F.3d at 1268).

[5] *Id.*

[6] *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) (internal quotations and citation omitted).

[7] *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 626, 650 (1999).

[8] *J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. App'x 445, 450 (10th Cir. 2010).

denial of access to educational opportunities or benefits provided by the school.  Defendant further argues that sex discrimination between two employees does not have a systemic effect on educational programs or activities such that Title IX would be triggered.

The Tenth Circuit has not addressed whether Title IX applies to allegations of sexual harassment perpetrated by one university employee on another university employee.  However, the balance of authority in other circuits and jurisdictions recognize Title IX liability for employee-on-employee sex discrimination and harassment.[9]  The United States Supreme Court has also clarified that Title IX's prohibition of sex discrimination applies not only to students, but also to "[e]mployees who directly participate in federal programs or who directly benefit from federal grants, loans, or contracts," which broadened the scope of Title IX to include employment discrimination.[10]  There was sufficient evidence presented at trial that Plaintiff suffered emotional distress and felt unsafe at her job with Defendant.  Both comfort and safety are benefits provided by Defendant to its employees, so the harassing conduct denied Plaintiff access to these benefits.  There was also sufficient evidence at trial that the harassment by Jana Giles involved and was witnessed by other employees in the custodial department and at the university, including a fight in front of managers Wanda Endicott and Kevin Malle, hair touching

---

[9] *See Ivan v. Kent State Univ.*, No. 94-4090, 1996 WL 422496, at *3 n.10 (6th Cir. 1996) (overruling the district court's conclusion that "Title VII preempts an individual's private remedy under Title IX"); *Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 205–06 (4th Cir. 1994) ("An implied private right of action exists for enforcement of Title IX . . . [which] extends to employment discrimination on the basis of gender by education institutions receiving federal funds.") (citation omitted); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 897 (1st Cir. 1988); *Russell v. Nebo Sch. Dist.*, No. 16-CV-00273, 2016 WL 4287542, at *3 (D. Utah Aug. 15, 2016) (concluding Title VII does not preempt Title IX and there is a Title IX remedy for employment discrimination); *Winters v. Pennsylvania State Univ.*, No. 15-CV-01166, 2016 WL 1110215, at *10–11 (M.D. Pa. Mar. 22, 2016) (concluding Title VII does not preempt Plaintiff's Title IX employment discrimination claim); *Toth v. California Univ. of Pennsylvania*, 844 F. Supp. 2d 611, 635 (W.D. Pa. 2012) ("The protection from sex-based discrimination provided under Title IX extends not only to students attending covered educational institutions, but also to individuals employed by those institutions."); *Howard v. Bd. of Educ. of Sycamore Cmty. Unit Sch. Dist. No. 427*, 876 F. Supp. 959, 973–74 (N.D. Ill. 1995).  *Contra Lakoski v. James*, 66 F.3d 751, 754–55 (5th Cir. 1995) (holding that because a private remedy exists under Title VII for aggrieved employees, Title IX did not allow for an implied private right of action in cases of employment discrimination).

[10] *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 520 (1982).

witnessed by Dr. Joanne Britz, and meetings with Cindy Johnson, Director of the Office of Institutional Equity.  Based on this evidence, a reasonable jury could have found a systemic effect on the school's programs or activities, specifically in the custodial department, such that Title IX is triggered.

Next, under the Title IX claim, there is sufficient evidence that actual notice was made to an appropriate person prior to February 2014.  There was evidence presented at trial that Wanda Endicott, Director of Custodial Services, suggested that Plaintiff was alleging sexual harassment as early as the fall of 2013 when Jana Giles and Plaintiff were in Endicott's office with Kevin Malle, Physical Plant Supervisor.  Plaintiff also testified that she had reported harassing behavior beginning in 2012 to Kevin Malle sometimes as often as three times per week.  Plaintiff's husband testified he also reported harassing behavior to Kevin Malle.  Sandy Brown, a custodial specialist, testified she reported issues between Plaintiff and Jana Giles to Wanda Endicott in 2013.  There was evidence also presented at trial that in PSU's hostile work environment awareness training PowerPoint, employees were told to report harassing behavior to someone who was authorized to take action to stop the behavior, like the employee's supervisor.[11]  Plaintiff and Sandy Brown testified that Kevin Malle was Plaintiff's direct supervisor and who they were supposed to report to first.  Therefore, the evidence at trial was sufficient to allow a reasonable jury to conclude that Defendant had actual notice of the harassment before February 2014 because Plaintiff, Sandy Brown, and Plaintiff's husband reported it to both Kevin Malle and Wanda Endicott, who were appropriate persons at PSU.

Lastly, there is sufficient evidence that Defendant acted unreasonably in response to the reported sexual harassment and with deliberate indifference for purposes of liability under Title

---

[11] Pl's Ex. 12.

IX. Following the meeting where sexual harassment was alleged in front of managers Wanda Endicott and Kevin Malle in the fall of 2013, there was evidence that no further investigation was made into the alleged sexual harassment.  Further, there was evidence that Wanda Endicott and Kevin Malle did not report the sexual harassment to Cindy Johnson.  The measures immediately taken in response were to have Jana Giles and Plaintiff not clock in or out at the same time.  There was also testimony that Plaintiff and Plaintiff's husband told Kevin Malle throughout 2012, 2013, and 2014 that Jana Giles was harassing her to which he would reply that he was going to take care of it.  There was no evidence presented that he did take care of it, discipline Jana Giles, or separate the two when this behavior was reported.  In February 2014, when sexual harassment was alleged to Cindy Johnson, there was evidence that she did not interview witnesses, or investigate many of the claims made by Plaintiff and her husband in written statements.  Therefore, there is sufficient evidence that Defendant's actions in response to notice of sexual harassment were clearly unreasonable, and Defendant acted with deliberate indifference.

Defendant argues there was insufficient evidence at trial to support Plaintiff's verdict under Title VII for the following reasons: (1) no reasonable jury could conclude the alleged conduct was harassment because of  Plaintiff's sex; (2) Plaintiff failed to prove the conduct was severe, physically threatening or humiliating, frequent, or unreasonably interfered with Plaintiff's work; (3) any alleged off campus conduct is not actionable under Title VII; (4) Plaintiff failed to prove Defendant had actual notice until February 2014; and (5) Plaintiff failed to prove an inadequate response once Defendant did have notice.

The Court rejects each of these arguments.  Under the Title VII claim, there is sufficient evidence that the alleged harassment occurred because of Plaintiff's sex.  The Supreme Court has

provided three means for proving same-sex sexual harassment: (1) the harasser was motivated by sexual desire; (2) the harasser was motivated by general hostility to the presence of women in the workplace; (3) direct evidence that compares how the harasser treated members of both sexes in a mixed-sex workplace.[12]  There is sufficient evidence that the harassment was motivated by sexual desire.  Evidence was presented that Jana Giles asked Plaintiff's husband how his wife tasted.  There was also testimony from Plaintiff that Jana Giles rubbed against her in a bathroom stall, rubbed her crotch in front of Plaintiff, made a "hu-hu-hu" noise and said she had practiced that noise all night long for Plaintiff, asked Plaintiff if she had ever been with a woman, and touched her hair without consent.  There was video evidence admitted that showed Cathy Butler Brown being filmed by Plaintiff and stating that Plaintiff should "picture this" while grabbing at her crotch.  A reasonable jury could conclude that such comments and conduct from Jana Giles and Cathy Butler Brown were motivated by a sexual desire, so the harassment occurred because of Plaintiff's sex.

Also, under the Title VII claim, there is sufficient evidence that the conduct was severe, physically threatening or humiliating, frequent, and unreasonably interfered with Plaintiff's work environment.  There was evidence of physically threatening comments and conduct by Jana Giles, including sitting at the top of Plaintiff's street in February 2014 and threatening to wipe her ass with Plaintiff in a heated argument in fall of 2013.  There was evidence of humiliating remarks from Jana Giles, including calling Plaintiff a skunk and a bitch multiple times.  Plaintiff presented evidence that the sexually harassing comments and conduct would happen as frequently as two to three times per week beginning in 2012 until 2014.  This evidence was corroborated by testimony of Plaintiff's husband, and changes in Plaintiff's appearance noted by

---

[12] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998).

Sandy Brown. There was evidence presented from a meeting with Cindy Johnson in March 2014 where she admitted that the conduct had "changed the pattern of work" and had made Plaintiff uncomfortable. A reasonable jury could conclude that the conduct was severe, physically threatening or humiliating, frequent, and unreasonably interfered with Plaintiff's work environment.

Next, Defendant may be liable as a matter of law for the conduct occurring after work hours and off campus under Title VII. Defendant argues that under case law, employers are not liable for conduct occurring after hours and away from the workplace.[13] However, in one of the seminal cases for sexual harassment, the Supreme Court considered a number of events occurring outside of work and after business hours.[14] Although the February 21, 2014 incident involving Kristi McGowan and Jana Giles following the Foxes home is not the only evidence of a hostile work environment, the jury could have properly considered the event. There was evidence adduced at trial that Kristi McGowan intended to go to the Foxes home, and it was not simply on the same route home as Defendant suggests. Also, it is uncontroverted that Jana Giles was present at the February 21, 2014 incident. A reasonable jury could have considered the event to be hostile and threatening, and it was properly considered in the Title VII claim.

Finally, there was sufficient evidence that Defendant had notice of the harassment prior to February 2014 and failed to adequately respond. This is discussed more fully in the context of Title IX above. There was evidence adduced at trial that Wanda Endicott and Kevin Malle had heard allegations of sexual harassment in the fall of 2013. The response to those allegations was

---

[13] *See Silver v. Primero Reorganized Sch. Dist. No. 2*, No. CIVA06-CV-02088-MSK-BNB, 2008 WL 700171, at *6 (D. Colo. Mar. 13, 2008).

[14] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 59–61 (1986) (considering evidence of dinner outside of work with the alleged harasser where he suggested they go to a motel to have sexual relations and repeated demands for sexual favors after work hours).

to have Jana Giles and Plaintiff not clock in or out together.  A reasonable jury could conclude that Defendant had notice of sexual harassment prior to February 2014 and did not respond.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's oral and written motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) are **denied**.

**IT IS SO ORDERED.**

Dated: October 14, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
