## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MARTHA FOX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-CV-2606-JAR-KGG** |
| | ) | |
| **PITTSBURG STATE UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT PITTSBURG STATE UNIVERSITY'S
## MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO TITLE IX CLAIM

As per Fed. R. Civ. P. 50(b), Defendant Pittsburg State University (PSU), through Assistant Attorneys General Whitney L. Casement and M.J. Willoughby, renews its motion for judgment as a matter of law as to the Plaintiff's claims against PSU pursuant to Title IX.

Plaintiff's Title IX claim fails as a matter of law because Plaintiff failed to demonstrate that her custodial employment had any connection to education programs or activities at PSU as required by 20 U.S.C. § 1681(a). Further, Title IX does not create a private right of action by an employee for damages against a sovereign entity such as Pittsburg State University, an entity of the State of Kansas. Even assuming a cause of action exists, Plaintiff failed to meet its stringent requirements as a matter of law.

### NATURE OF THE CASE AND MATTER BEFORE THE COURT

After a trial in this case, on October 11, 2016, the jury returned a verdict in favor of Plaintiff on both her Title VII and Title IX sexual harassment claims. Defendant PSU filed a Motion for Judgment as a Matter of Law as to Plaintiff's Title IX claim at the end of Plaintiff's case in chief. Doc. 185. PSU renewed its motion for judgment as a matter of law at the end of

PSU's case in chief. Docs. 187 and 188. On October 14, 2016, this Court denied Defendant PSU's Motion for Judgment as a Matter of Law. Doc. 196, Memorandum and Order.

In denying PSU's Rule 50 motions submitted as required by that Rule during trial, this Court acknowledged that "the Tenth Circuit has not addressed whether Title IX applies to allegations of sexual harassment perpetrated by one university employee on another university employee." Doc. 196, at 3. However, this Court still ruled that Plaintiff has a viable claim under Title IX even though Plaintiff failed to demonstrate that her employment involved any educational aspects. Defendant believes that it has both the opportunity and the obligation to allow this Court the opportunity to correct this error prior to raising arguments in the appellate court. Some of the arguments presented herein are similar to those previously presented, and if necessary, Defendant requests reconsideration of the Court's earlier ruling.

Defendant Pittsburg State University also intends to file a Motion for New Trial or in the Alternative for Remittitur by or before the 28-day deadline in which it will raise issues regarding duplicative and excessive recovery, among other issues.

## QUESTIONS PRESENTED

I.    **Title IX does not apply to employment claims, such as claims by a custodian, having no nexus to educational programs or activities.**

II.   **Congress did not create a private right of action under Title IX for damages against a sovereign state for alleged sexual harassment by a co-worker.**

III.  **Martha Fox failed to meet the high standard for proving damages under Title IX.**

IV.   **Martha Fox failed to prove actual notice of sexual harassment to an appropriate person and deliberate indifference by PSU.**

## ARGUMENTS AND AUTHORITIES

**I.      By its Express Terms, Title IX Does Not Apply to Custodial Employment.**

The beginning point of any statutory construction argument is with the plain language of the statute as enacted by Congress. Title IX provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). In enacting Title IX in 1972, Congress did not provide that sex discrimination in employment was actionable under Title IX, which is, after all, contained in the Education Title. Although there have been subsequent amendments, none have changed this language. Was Custodian Martha Fox "excluded from participation in, . . . denied the benefits of, or . . . subjected to discrimination under any education program or activity receiving Federal financial assistance"? The answer is clearly no, as custodial employment is not an "education program or activity." To find otherwise, is to judicially rewrite the statute rather than to apply it as written by Congress.

Title IX cannot be interpreted to include non-education related employment claims for the following reasons. First, recognizing Title IX employment discrimination claims having no connection to education obviates the purposes of Title VII and circumvents its administrative requirements. Second, the plain language of Title IX and its legislative history require that Plaintiff show her employment has some nexus to education. Third, contrary to the Court's ruling on PSU's Rule 50 motion, *North Haven Bd. of Ed. v. Bell,* 456 U.S. 512 (1982), did not address whether or not discrimination must occur under an educational program or activity. *See* Doc. 196, Memorandum and Order, at 3. Fourth, the Supreme Court has only recognized a private right of action under Title IX in the context of teacher-on-student or student-on-student

harassment. Finally, custodial services clearly have no connection to any educational program or activity.

### A. Recognizing Title IX employment discrimination claims having no nexus to education obviates the purpose of Title VII and its administrative requirements.

As noted in *Walters v. President and Fellows of Harvard College*, 601 F. Supp. 867, 868-69 (D. Mass. 1985), rejecting a Title IX claim by a building and grounds employee, there is no need to judicially create or imply a cause of action for sexual harassment by a university employee against another employee since remedies are available (and were obtained here), by Fox under Title VII. Allowing a plaintiff to assert an additional cause of action under Title IX for the same conduct impermissibly allows double recovery for the same underlying wrong. Further, allowing a plaintiff to assert a Title IX claim undermines congressional intent that discrimination plaintiffs exhaust administrative remedies available before the EEOC. Courts have held that "Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title VII." *Urie v. Yale Univ.*, 331 F. Supp. 2d 94, 97-98 (D. Conn. 2004) (dismissing the Title IX claim, refusing to accept the "minority position" allowing a duplicative claim, citing cases including *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 861-62 (7th Cir.1996); *Lakoski v. James*, 66 F.3d 751, 753-54 (5th Cir.1995); *Vega v. State Univ. of N.Y. Bd. of Trustees*, 2000 WL 381430,*3 (S.D.N.Y. 2000)). *Accord Blalock v. Dale County Bd. of Educ.*, 84 F. Supp. 2d 1291 (M.D. Ala. 1999); *Wedding v. Univ. of Toledo*, 862 F. Supp. 201 (N.D. Ohio 1994) (Title IX claim for sex discrimination in employment preempted by Title VII), *aff'd in part, rev'd in part on other grounds by* 89 F.3d 316 (6th Cir. 1996).

In this Court's Memorandum and Order (Doc. 196, at n.9), this Court acknowledged the Fifth Circuit's correct holding in *Lakoski v. James* that Title IX is not available given Title VII,

but cited other cases, none of which is from the Tenth Circuit Court of Appeals. The Court made no analysis of why allowing Fox to maintain a separate Title IX action here is a good result as a matter of policy or law, or consistent with Congressional intent. *Lakoski* provides a reasoned analysis for why a Title IX claim cannot stand when a claimant is able to bring a Title VII action. First, *Lakoski* distinguished previously cases, *Cannon v. University of Chicago*, 441 U.S. 677 (1979), *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512 (1982), and *Franklin v. Gwinnett County Pub Schs.*, 503 U.S. 60 (1992), noting that none of those cases decided whether a plaintiff could bring a Title IX employment claim where Title VII provides an adequate remedy. *Lakoski*, 66 F.3d at 753-54. The court further noted that allowing a plaintiff to bring both causes of action "would disrupt a carefully balanced remedial scheme for redressing employment discrimination by employers . . . ." *Id*. at 754. Like the *Lakoski* court, this Court should be equally "unwilling to do such violence to the congressionally mandated procedures of Title VII." *Id*.

Moreover, the legislative history of Title IX and Title VII, as sort forth in various cases analyzing the laws, demonstrates that only employees having a nexus to education may bring a cause of action under Title IX. Prior to its amendment in 1972, Title VII exempted "from its protection employees of educational institutions who 'perform work connected with the educational activities' of the institution." *Islesboro School Comm. v. Califano*, 593 F.2d 424, 427-28 (1st Cir. 1979) *disapproved on other grounds by North Haven Bd. of Ed. v. Bell*, 456 U.S. 512 (1982). In 1972, Title VII was amended to remove this exemption, thus allowing employees of educational institutions who performed work connected with educational activities to bring suit under Title VII. The statutory language never foreclosed employees of educational institutions who *did not* perform work connected with educational activities from bringing suit pursuant to Title VII. This would include employees such as custodial workers.

5

Shortly after the education exemption was removed from Title VII, Congress also enacted Title IX in order to close the loophole that had previously been in Title VII "relating to general education programs and employment resulting from those programs." *See North Haven,* 456 U.S. at 524 (citing legislative history); *Lakoski v. James*, 66 F.3d 751, 756 (5th Cir. 1995) (Title IX was enacted only months after amendments to Title VII). The logical conclusion that follows is that Title IX, like the amendment to Title VII, was intended to allow for employees having a nexus to education to bring an employment claim—an option they did not previously enjoy. Again, employees not having a nexus to education were never foreclosed from bringing a claim under Title VII. Employees having no connection to education should not be permitted to benefit from an amendment and a statutory enactment that was never intended to apply to them.

### B. The plain language of 20 U.S.C. § 1681, and its legislative history, requires Plaintiff to prove some nexus to education.

Amendments to Title IX have clarified that when an educational institution receives federal funding, the statute applies to the institution as a whole; however, these amendments do not supersede the plain language of the statute that, to maintain a claim under Title IX, plaintiff must "be subjected to discrimination under any <u>education</u> program or activity." 20 U.S.C. § 1681(a) (emphasis added).

This is first and foremost because the plain language of 20 U.S.C. § 1681 still maintains that one of three requirements must be met:

1. Plaintiff must be excluded from participation in any education program or activity; or

2. Plaintiff must be denied the benefits of any education program or activity; or

3. Plaintiff must be subjected to discrimination under any education program or activity.

These words should be interpreted according to their proper grammatical effect. It is clear that, even after Congress amended the statute, remaining are the words "education program or activity." Grammatically speaking, it is also clear that these words modify each of the three above options. The term "education program or activity" cannot simply be ignored. Thus, it is no wonder that in every case the Court relied on in denying Defendant's Rule 50 motion, the plaintiffs had some connection to education—that is what the statute requires.[1]

While Fox was employed by PSU, it cannot be said that Fox—a janitor—was discriminated *under* an education program or activity. The example given in *North Haven* is helpful here: "[A] female employee *who works in a federally funded education program* is 'subjected to discrimination under' that program if she is paid a lower salary for like work, given less opportunity for promotion, or forced to work under more adverse conditions than are her male colleagues." 456 U.S. at 521. It suggests that the Court has in mind a nexus between the employee and education.

In terms of legislative history, Title IX was amended in response to decisions, including *North Haven*, that held that Title IX was intended to be program specific—in other words, that it only applied to the specific program or activity that benefitted from federal funding, not the educational institution as a whole. *See Grove City Coll. v. Bell*, 465 U.S. 555, 570 (1984) *superseded by statute*, 20 U.S.C. § 1687, as recognized by *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 460 (1999). The amendment to Title IX clarified that the term "program"

---

[1] Doc. 196, at 3, n.9 (citing *Ivan v. Kent State University*, 92 F.3d 1185 (6th Cir. 1996) (recognizing Title IX cause of action by psychology student against university); *Preston v. Com. of Va. ex rel. New River Community College*, 31 F.3d 203 (4th Cir. 1994) (action by counselor for student support services); *Lipsett v. University of Puerto Rico*, 864 F.2d 881 (1st Cir. 1988) (action by student medical resident); *Russell v. Nebo School Dist.*, 2016 WL 4287542 (D. Utah Aug. 15, 2016) (action brought by resource technician); *Winter v. Pennsylvania State University*, 2016 WL 1110215 (M.D. Penn. March 22, 2016) (professor); *Toth v. California University of Pennsylvania*, 844 F. Supp. 2d 611 (W.D. Penn. 2012) (professor); *Howard v. Board of Educ. of Sycamore Community Unit School Dist. No. 427*, 876 F. Supp. 959 (N.D. Ill. 1995) (band director)).

means all operations of the institution that received federal funding, regardless of whether the specific program at issue benefitted from that funding. *See* 20 U.S.C. § 1687.

There is no question at this point that the whole of Pittsburg State University is subject to Title IX because part of the university benefits from federal funding.

But when a plaintiff is trying to use an implied private right of action under Title IX, she must still claim some nexus to education, according to the plain language of the statute. The amendment to the definition of "program" only decided the issue of whether a particular program that receives federal funding is covered by Title IX or whether the whole institution is covered. What it did not determine is whether an employee must pass the second tier of having some nexus to education—regardless of whether the whole institution is subject to Title IX.

The legislative history of Title IX comports with this conclusion. In *North Haven*, the Court quoted the legislative testimony of Senator Bayh, who introduced the provisions in the Senate. Senator Bayh stated that "*the heart of this amendment* is a provision banning sex discrimination in educational programs receiving Federal funds. The amendment would cover such crucial aspects as admissions procedures, scholarships, and *faculty* employment, with limited exceptions." *North Haven*, 456 U.S. at 524. Further, the Senator stated that "we are dealing with three basically different types of discrimination here. We are dealing with discrimination in admission to an institution, discrimination of available services or studies within an institution once students are admitted, and *discrimination in employment within an institution, as a member of a faculty or whatever*." *Id* at 526. Clearly the only types of employment cases contemplated by Congress were those by employees having a nexus to education. Senator Bayh's inclusion of the term "or whatever" can hardly be argued to include

the remainder of employees at a university, especially given the plain language of the statute, which requires that the discrimination occur under an education program or activity.

### C. *North Haven and Cannon did not decide the issue of whether discrimination must occur under an educational program or activity.*

The Court cited the majority's opinion in *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 520 (1982), for the proposition that "[t]he United States Supreme Court has also clarified that Title IX's prohibition on sex discrimination applies not only to students, but also to 'employees who directly participate in federal programs or who directly benefit from federal grants, loans, or contracts,' which broadened the scope of Title IX to include employment discrimination." *Id.* However, the plain language of *North Haven* does not extend Title IX to this situation. It says that Title IX covers employees "who directly participate in federal programs" or who "directly benefit from federal grants, loans, or contracts." 456 U.S. at 520. That's not the case here.

*North Haven* did not concern whether Title IX created a private right of action for damages by a non-teaching employee against a sovereign State, particularly when other federal statutes previously enacted created a clear and sufficient remedy for those complaining of sex discrimination in employment – *e.g.*, Title VII enacted in 1964. *See Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995). Rather, the limited issue before the Court in *North Haven* was whether the Department of Health Education and Welfare could validly issue regulations conditioning receipt of federal funding on certain handling of employee complaints. That is decidedly not the issue here but a much, much narrower one.

Here, Martha Fox never established that she was subjected to discrimination under any educational program or activity. As an employee, she would not be entitled to the educational opportunities at the university as would a student, faculty member, student guidance counselor, or other employee having a nexus to educational program or activities.

Furthermore, in *Cannon v. Univ. of Chicago*, 441 U.S. 677, 687 (1979), the Court held that Title IX created an implied private right of action based on the now-outdated *Cort v. Ash* factors, which first ask "whether the statute was enacted for the benefit of a special class of which the plaintiff is a member." In defining class, the *Cannon* Court stated that "Title IX explicitly confers a benefit on persons discriminated against on the basis of sex, and petitioner is clearly a member of that class for whose special benefit the statute was enacted." However, the plaintiff in *Cannon* was a medical school applicant—clearly having a nexus to education. The question of whether an employee having no nexus to education comes within Title IX was not before the *Cannon* Court. Again, this issue has been left undecided by the Tenth Circuit and the Supreme Court and should be decided according to the plain language and legislative history of the statutes.

### D.   The Supreme Court has only recognized a private right of action under Title IX in the context of teacher-on-student or student-on-student harassment.

The United States Supreme Court has only explicitly recognized a private right of action under Title IX for sexual discrimination claims in the context of teacher-on-student sexual harassment and student-on-student sexual harassment. *See Davis v. Monroe Cnty. Bd. of Ed.*, 526 U.S. 626 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 76 (1992). In *Davis*, the United States Supreme Court explained that "[t]he fact it was a teacher who engaged in harassment in *Franklin* and *Gebser* is relevant." *Davis*, 526 U.S. at 653. The Court clarified that it was the *relationship* between the perpetrator and the victim that "affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity." *Id.* The Court emphasized that peer-on-peer harassment was less likely to affect such requirements as opposed to teacher-on-student harassment. *Id.*

As a matter of law, Fox failed to establish the type of relationship that would trigger a breach of Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity. Just as peer-on-peer harassment is less likely to have a systemic effect on a program or activity, employee-on-employee harassment at a university would have even less of a systemic effect on a program or activity, especially where the employees are not involved in an educational program or activity. *Davis* specifically limited "private damages actions to cases having a systemic effect on educational programs or activities." *Id.*; *see also K. T. v. Culver-Stockton Coll.*, No. 4:16-CV-165 CAS, 2016 WL 4243965, at *6 (E.D. Mo. Aug. 11, 2016) (granting motion to dismiss Title IX claim when one instance of physical assault by a university student on a non-student did not have a systemic effect on educational programs or activities); *Johnson v. Indep. Sch. Dist. No. 47*, 194 F. Supp. 2d 939, 946 (D. Minn. 2002) (finding no evidence of systemic effect on educational programs or activities when student was teased in a sexual manner and decided to attend a different high school). Notably absent in Fox's case is any proof that the alleged discrimination that occurred had any systemic effect on educational programs or activities at PSU. As janitorial employees on the night shift, Fox and Giles had scant contact with students, professors, and other employees at the university, and their isolated dispute would hardly have a systemic effect on any educational program or activity.

Although some courts have found a private right of action regarding hostile environment sexual harassment claims when perpetrated by a supervisor upon an employee, the Tenth Circuit Court of Appeals has not addressed this issue. *See, e.g.*, *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 901 (1st Cir. 1988); *Ward v. John Hopkins Univ.*, 861 F. Supp. 367 (D. Md. 1994). Significantly, *Lipsett* and *Ward* involved a medical resident and a student, respectively. These cases were decided well before *Gebser* and *Davis*. Since *Gebser* and *Davis* were issued,

employee-on-employee sex discrimination causes of action under Title IX are mostly non-existent. Comparatively, the United States Supreme Court has recognized that an employee can bring a retaliation claim under Title IX. *See Jackson v. Birmingham Bd. of Ed..*, 544 U.S. 167 (2005). Again, *Jackson* involved an employee having a connection to education. No corollary exists in the sex discrimination hostile work environment case law under Title IX likely because, as here, the plaintiff cannot establish that sex discrimination between two employees with no supervisorial relationship has a systemic effect on educational programs or activities, or that Fox was subjected to discrimination under an education program or activity. Consequently, PSU is entitled to judgment as a matter of law because Fox failed to establish an actionable claim for damages under Title IX.

### E.   Custodial services do not constitute an educational program or activity.

This Court's Memorandum and Order (Doc. 196, at 3-4), stated that there was evidence that other custodians witnessed harassment, which the Court does not specify other than referring to the one-time argument that occurred in the Physical Plant, and the single hair touching witnessed by Dr. Britz which she testified was consensual. The Court stated, without authority, that these isolated incidents not involving any educational programs (but rather specifically the custodial department), were sufficient for a jury to possibly have found a systemic effect on the school's programs or activities. However, a custodial program, referenced by the Court, is not an educational program or activity. The incidents specifically cited by the Court were isolated – a one-time argument and a one-time consensual hair touching. There is no authority for finding that the September 2013 argument at the Physical Plant or the consensual hair touching incident affected an education program or activity and the Court's Order cites none. There is simply no need for the Court to strain so far to support a result where Plaintiff failed to meet her burden with evidence.

Even as broadly interpreted by this Court in its Memorandum and Order (Doc. 196, at 3), Plaintiff Martha Fox made no showing that in her custodial employment at PSU that her employment had any connection to education. Even if this Court's interpretation were correct, this was a jurisdictional or statutory element on which Plaintiff bore the burden of proof and on which no evidence was presented during Plaintiff's case in chief. In fact, whether the complaining teachers in that case were within the coverage of the proposed regulations promulgated by the Department of Health Education and Welfare was one of the issues left open by the Court in *North Haven* as no evidence had been presented.

*Preyer v. Dartmouth College*, 968 F. Supp. 20, 25 (D.N.H. 1997) is directly on point. There, the court held that the food services department of a university had no inherently educational goal and, thus, a claim by a food services worker could not stand under Title IX. The court reasoned that, although Title IX had been amended to include more than the specific program that received federal funding, the amendment "did not alter the requirement that the program or activity in which the complaining party is involved be educational in nature." *Id*. Similarly, in *Walters v. President and Fellows of Harvard College*, 601 F. Supp. 867 (D. Mass. 1985), the court held that the building and grounds department was not an educational program or activity and hence, an employee in that department could not maintain a claim under Title IX. In reaching that result, the court noted that the statutory language requires discrimination in an educational program or activity. The court found that the statute "clearly differentiates between educational activities and educational institutions as a whole. The court found that the phrase educational program or activity "is clearly intended to convey something more directly related to educational services than the purely custodial services provided by the Grounds Department

here. There is no need to put a strained interpretation on the language of Title IX when Congress has enacted an adequate remedy under Title VII." *Id.* at 869.

Likewise, in this case custodial services are not in any way related to educational services, and Plaintiff failed to prove a necessary element of her Title IX claim.

## II.   Congress Did Not Create a Private Right of Action under Title IX for Damages Against a Sovereign State for Alleged Sexual Harassment by a Co-Worker.

Defendant PSU is immune to Plaintiff's Title IX claim, which asks the Court to find an implied right of action for money damages based on a claim of employment discrimination against a sovereign for alleged sexual harassment by a co-worker. To be sure, in *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992), the U.S. Supreme Court held that the implied private right of action it recognized under Title IX in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), supported a claim for money damages. *Cannon* and *Franklin*, however, involved students alleging sex discrimination by educational institutions, not employees alleging sex discrimination in employment (which, again, is covered by Title VII). *See Franklin*, 503 U.S. at 63; *Cannon*, 441 U.S. at 680.

Perhaps more importantly, *Franklin* involved an action for damages against *nonfederal*, *nonsovereign* defendants. *Lane v. Pena*, 518 U.S. 187, 196 (1996). Thus, "the Court had no occasion to consider sovereign immunity." *Sossamon v. Texas*, 563 U.S. 277, 289 n.6 (2011); *see also Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 369 (2001) ("[T]he Eleventh Amendment does not extend its immunity to units of local government," such as counties.) Because "[l]iability against nonsovereigns could not put the States on notice that they would be liable in the same manner, absent an unequivocal textual waiver," *Franklin* does not provide for the claim Plaintiff has brought here. *Sossamon*, 563 U.S. at 289 n.6.

In *Franklin,* the Court explained that the "general rule"—regarding nonsovereigns—"is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." 503 U.S. at 70-71. The opposite rule applies in suits, like this one, that involve a sovereign entity. *Lane*, 518 U.S. at 196-97. Where a cause of action is authorized against a State, "the available remedies are not those that are 'appropriate,' but only those for which sovereign immunity has been expressly waived." *Id.* at 197. Although *Lane* involved the Federal Government, this "strict construction principle, which flows logically from the requirement that consent be 'unequivocally expressed,' applies to the sovereign immunity of the States as well." *Sossamon*, 563 U.S. at 285 n.4.

Because "[s]overeign immunity principles enforce an important constitutional limitation on the power of the federal courts," a "State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute." *Sossamon*, 563 U.S. at 284. This "stringent" rule under which "waiver of sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign," applies equally to determining whether a State has waived sovereign immunity with respect to damages claims in particular. *Sossamon*, 563 U.S. at 284-85 (internal quotation marks omitted). A "waiver of sovereign immunity to other types of relief does not waive immunity to damages: '[T]he waiver of sovereign immunity must extend unambiguously to such monetary claims.'" *Id.* (quoting *Lane*, 518 U.S. at 192). "Waiver may not be implied." *Id.* The question, then is whether there has been a clear and unequivocal waiver of the State's sovereign immunity to employment discrimination suits under Title IX.

To begin with, this Court has acknowledged that neither the U.S. Supreme Court nor the Tenth Circuit has held that Title IX applies to this context, where one university employee claims

sexual harassment by another university employee. *See* Doc. 196, Memorandum & Order; *see also supra* Part I. Since it is not even settled that Title IX applies to this situation in the first place, the States have not received the clear and unequivocal notice required to ensure that a State "in fact consents to suit." *Sossamon*, 563 U.S. at 284 (internal quotation marks omitted); *see also id.* ("[A] waiver of sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." (internal quotation marks omitted)). That the federal government may terminate federal education funding to recipients that discriminate on the basis of sex in their employment practices, *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 522, 530 (1982), does not create an implied *private* right of action for damages against the State, *see Alexander v. Sandoval*, 532 U.S. 275, 293 (2001) (holding that Title VI does not create a private right of action to enforce disparate impact regulations even though the Court has held that a private right of action exists to enforce Title VI's prohibition on intentional discrimination and assumed that the disparate impact regulations were valid).

Even if Plaintiff is able to clear the initial hurdle of establishing an implied private right of action for employment discrimination under Title IX, she must next show that the State has waived its sovereign immunity *to damages* under the implied private right of action she claims. *See Sossamon*, 563 U.S. at 285. This she cannot do. To determine whether money damages is one of the available remedies under Plaintiff's claimed implied private right of action, we look first to whether 42 U.S.C. § 2000d-7 (the remedy provision of the Rehabilitation Act Amendments of 1986) clearly authorizes an action for damages as required by *Sossamon*. It does not. All that statute says is:

> In a suit against a State for a violation of a statute referred to in paragraph (1), [which includes Title IX,] remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available

for such a violation in the suit against any public or private entity other than a
State.

42 U.S.C. § 2000d-7(a)(2).

Section 2000d-7(a)(2) provides no clear and unequivocal waiver. Instead it points back to
Title IX and requires determining what "remedies are available for such a violation in the suit
against any public or private entity other than a State." As discussed above, it is far from clear
that Title IX even creates an implied right of action against any public or private entity based on
alleged sexual harassment by one employee against another. That neither this Court, nor the
Tenth Circuit, nor the U.S. Supreme Court has held that Title IX creates the sort of implied
private right of action Plaintiff asserts here, and that there is conflicting authority in other
jurisdictions on the question, *see Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995), is fatal to
Plaintiff's Title IX claim. Nothing, and certainly no "clear statement in the text of [a] statute,"
requires States to waive their immunity to the sort of damages action Plaintiff asserts. *Sossamon*,
563 U.S. at 290.

Even if this Court were to hold that Title IX does provide the type of implied right of
action Plaintiff asserts, Defendant PSU had no way of knowing more than five years ago that
accepting federal funds would expose it to this type of suit under Title IX, much less money
damages. Yes, the Supreme Court has implied a cause of action under Title IX, holding that it
authorizes "appropriate relief." *Franklin*, 503 U.S. at 70-71. But "appropriate relief" is the exact
term found to be insufficient to effect a waiver of sovereign immunity to damages in *Sossamon*.
563 U.S. at 285-86 ("RLUIPA's authorization of 'appropriate relief against a government,' §
2000cc-2(a), is not the unequivocal expression of state consent that our precedents require.").
Holding that § 2000d-7(a)(2)—by way of Title IX, as amended by judicial decisions implying a

remedy for "appropriate relief," which has been interpreted to include damages—clearly requires a waiver of immunity from damages would be inconsistent with *Sossamon*.

The U.S. Supreme Court long ago abandoned its permissive implied-right-of-action cases, like *Cannon* and *Franklin*, in favor of an approach that is more faithful to the text of statutes. *See Franklin*, 503 U.S. at 77-78 (Scalia, J., concurring in the judgment); *Sandoval*, 532 U.S. at 293. Expanding the implied private right of action found in *Franklin*, then taking the additional step of applying that newly created cause of action against a sovereign, would be contrary to the U.S. Supreme Court's current approach to implied rights of action and state sovereign immunity.

The award of $100,000 in emotional distress damages against PSU under Title IX, an entity of the State of Kansas, is unconstitutional, unauthorized by law, and cannot be upheld.

### III. Plaintiff Fox Failed to Provide Evidence Meeting the High Standard for Damages Required for Title IX Claims.

Mere allegations of panic attacks are insufficient to prove denial of access to a benefit provided by the university. *Cf. Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 823 (7th Cir. 2003) (holding student's diagnosis for "some psychological problems" was insufficient to prove denial of access to education when grades remained steady and there was no increase in absenteeism); *Burwell v. Pekin Cmty. High Sch. Dist. 303*, 213 F. Supp. 2d 917, 932 (C.D. Ill. 2002) (finding no denial of access to educational opportunities where student was able to graduate with her class and obtained her highest grades despite allegations of post-traumatic stress disorder).

In its Memorandum and Order (Doc. 196, at 3), the Court stated that Plaintiff's mere testimony that she suffered emotional distress was sufficient to meet Title IX requirements. The Court cited no authorities of its own in support of its finding. The Court did not discuss, let alone

distinguish, PSU's cited authorities as to the degree of the showing required to establish a Title IX violation. It is undisputed that Plaintiff Fox never sought treatment for any mental or emotional distress relating to any alleged sexual harassment. While seeking treatment may not be required in the context of a usual garden variety emotional distress claim, Title IX requires more as illustrated by the above cases. Plaintiff's testimony failed to meet the required standard.

In the employment context, 34 C.F.R. Pt. 106.51, *et seq*. provides a laundry list of benefits that cannot be denied on the basis of sex in an educational program or activity conducted by a federal aid recipient. Fox never testified that she was subjected to any concrete or tangible change in her employment or that she was denied any benefit by PSU or subjected to discrimination by PSU itself. Prior to trial, Fox stipulated that she received satisfactory evaluations on her job performance. Doc. 81, at 2. Plaintiff provided no evidence that she was denied access to any of the benefits of employment contemplated by 34 C.F.R. Pt. 106.51. In fact, in granting PSU's motion for summary judgment on the retaliation claim, this Court held that Fox suffered no adverse action in her employment at PSU for purposes of Title VII. Doc. 127, at 26. By contrast, in its Memorandum and Order denying PSU's Rule 50 motion, this Court generally stated that Fox had been denied "comfort and safety" in her employment. Doc. 196, at 3. The Court cited no authority for the "comfort and safety" standard which is not found in statute. This Court-created "comfort and safety" standard is even lower than the Title VII standard for materially adverse action.

As to any alleged lack of safety, there was insufficient evidence to support such a claim. Giles and Fox worked in buildings far apart from each other on campus, only saw each other when at least 20 other custodians were present, and had access to campus police, who could have been on the scene within 2-3 minutes according to the undisputed testimony at trial.

Further, this standard is an objective one, not a subjective one – therefore, Plaintiff's subjective beliefs or testimony, even if accepted at face value, are insufficient to meet the high objective standard required by Title IX. *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 650 (1999) ("funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.").

IV.    **Fox Failed to Meet Her Heavy Burden of Showing Actual Notice of Sexual Harassment to an Appropriate Person and Deliberate Indifference by PSU**

PSU will not reiterate here what it has already argued in its motions for judgment as a matter of law. Doc. 185, PSU's Motion for Judgment as to Title IX Claims; Doc. 188, PSU's Motion for Judgment as to Title IX Claims. However, PSU believes the Court made errors in its denial of PSU's motions and here, provides explanation for why the Court should reconsider its prior decision.

As a precondition to maintaining the judicially-implied private right of action against a non-sovereign entity such as a school district, Courts have required that the plaintiff prove the aid recipient had actual notice, as opposed to constructive notice, of the discrimination and demonstrated deliberate indifference to such discrimination. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998). Notice must also be made to an "appropriate person" and there must be an opportunity to rectify any violation. 20 U.S.C. § 1682.

### A.  *Actual notice was not given to an appropriate person prior to February 2014.*

*Gebser* requires that notice be made to "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf." *Id.* at 290; *see also Escue v. Northern OK College*, 450 F.3d 1146, 1155 (10th Cir. 2006)

(finding an appropriate person to constitute an individual with "the authority to take corrective action to end the discrimination"). Although the Tenth Circuit will not "simply name job titles that would or would not adequately satisfy this requirement," precedent establishes that Martha Fox did not put PSU on notice of any allegations of sexual harassment until February 2014 because she did not make any complaints to an appropriate official at PSU who had the power to end the harassment until that date. *See Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999) (concluding that the highest ranking administrator, a school principal, was an appropriate official); *Ross v. Univ. of Tulsa*, No. 14-CV-484-TCK-PJC, 2016 WL 1545138, at *12 (N.D. Okla. Apr. 15, 2016) (campus police constituted "appropriate official" because the university policy designated campus police as the "proper recipient of a sexual violence report." as opposed to a low-level university employee); *see also Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202*, 475 F. Supp. 2d 1092, 1098-99 (D. Kan. 2007) (citing cases) (observing that principal of school is individual with the responsibility and authority to be deemed an "appropriate person" under Title IX); *Burtner v. Hiram College,* 9 F. Supp. 2d 852, 856 (N.D. Ohio 1998) (finding that the director of career services and the grievance officer for the university did not meet the *Gebser* threshold). Fox cannot recover for anything allegedly occurring prior to February 2014 as no actual notice of sexual harassment as required by Title IX was given – including no specifics of any sexually harassing conduct by Giles – and cannot recover under Title IX after her report to Johnson as nothing happened of a sexually harassing nature after the report to Johnson, as admitted by the Foxes. *See* Trial Transcript, 10-04-16, 276:20-277:7.

In contrast, here, PSU has officially designated Cindy Johnson as its Title IX compliance officer, which is clearly communicated to everyone via the University website, including

Plaintiff Fox. *See* Plaintiff's Exhibit 11; Plaintiff's Exhibit 6. In PSU's view, no one but Johnson could put PSU's federal dollars at risk under Title IX, 20 U.S.C. § 1682, or subject the University to liability.

Instead of following the procedure clearly and officially designated by PSU which Fox was on notice of and agreed to when she began employment with PSU has per her signed acknowledgment (Plaintiff's Exhibit 6), Martha Fox testified generally that she complained to Kevin Malle various times. Even if the Foxes' self-serving uncorroborated testimony is accepted over Malle's, as a matter of law, Malle is too low level to qualify as an "appropriate person" for purposes of Title IX under the case law cited above herein. In trying to find that Malle was an "appropriate person," this Court cited Fox's and Brown's testimony that as a general matter, they were supposed to go to Malle first and relied upon one of Plaintiff's exhibits, a PowerPoint training slide informing PSU employees that they should report sexual harassment to a "supervisor." Doc. 196, at 4. Although there is no evidence that a PowerPoint training slide establishes PSU policy for purposes of Title IX liability, all of the evidence presented at trial was that Malle was a scheduler or manager lacking any disciplinary authority over any employee.

And although Wanda Endicott was higher level than Malle, as the director of only a single unit within a very large university, there was no evidence that Endicott had the responsibility for the overall operation at PSU similar to a school superintendent or principal recognized in the Title IX case law. *Warren v. Reading School Dist.*, 278 F.3d 163 (3d Cir. 2002) (principal was an "appropriate person" as he was in charge of the daily operation of the entire school; guidance counselor who received a report of harassment was not, remanding for a new trial on plaintiff's Title IX claim). As a matter of law, neither Malle nor Endicott was an "appropriate person" contemplated by Title IX. As low-level managerial employees, these

individuals are not like the campus police, or the human resources department, or other high level officials that would be designated as appropriate persons "to address the alleged discrimination and to institute corrective measures *on the recipient's behalf*." *Gebser*, 524 U.S. at 290 (emphasis added). In any event, the thin reeds identified by the Court as provided by Fox are insufficient to bear the weight of the high legal standard established by the Courts for an "appropriate person," under Title IX, meaning one report to this employee could subject a university to the loss of all federal funds received—a very important function or role.

### B. Fox's alleged verbal statements were too vague to give PSU actual notice that she was being harassed.

Further, even as to any alleged reports to Malle or Endicott, actual notice "requires more than a simple report of inappropriate conduct." *Id.* at 291. The notice to an appropriate person "must be sufficiently detailed" in order to put that person on notice of the possibility of harassment in violation of Title IX. *Rost v. Steamboat Springs Re-2 Sch. Dist.*, 511 F.3d 1114, 1119-20 (10th Cir. 2008). In *Rost*, the Tenth Circuit held that a female student's statement that other male students were "bothering her" was insufficient to put the school on notice of the sexual harassment. *Id.* at 1119.

Although Endicott denied receiving any reports from Sandy Brown, Sandy Brown testified merely that there was 'something going on' but did not state that the 'something' was sexual harassment and did not give any specifics. Trial Transcript, 10-03-16, 22:10-22. This is insufficient to meet the standard for actual notice.

As to Fox's own testimony, Fox was also vague as to precisely what she said and, more importantly, when she said it. Trial Transcript, 10-03-16, 69:21-24 ("I told Kevin Malle exactly what she was doing. I said she had followed me home. She—on three different occasions she had followed me home."); Trial Transcript, 10-03-16, 70:14-17 ("it was in 2012, 2013. It was just an

23

ongoing thing."). The September 2013 argument relied upon by Plaintiff is akin to a general report found insufficient in *Gebser* and by the Tenth Circuit. *Gebser,* at 290; *Rost*, 511 F.3d at 1119; *J.M. ex rel. Morris*, 397 F. App'x at 453. Fox also provided no dates whatsoever of any alleged report. Hence, as a matter of law, no liability can attach to any alleged reports made in 2012 or 2013.

The undisputed evidence at trial shows that neither Malle nor Endicott interpreted Fox's complaints to be about sexual harassment; they also did not believe the dispute to be sexual in nature. Since *Gebser* specifically eradicated a constructive notice requirement from Title IX— the inquiry is not whether Malle and Endicott *should have known* Fox's disagreement with Giles was about sexual harassment, but whether they *actually knew* the complaint was for sexual harassment. *Gebser*, 524 U.S. at 282-85. Fox failed to meet her burden of establishing that Malle or Endicott actually knew she was making a complaint for sexual harassment. Accordingly, PSU is entitled to judgment as a matter of law because the actual notice requirements under Title IX were not met prior to February 2014.

### C. Fox failed to show that PSU acted with deliberate indifference to actual knowledge of sexual harassment.

A recipient's response will only be deemed deliberately indifferent if the response or nonresponse "is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. The "reasonableness standard" is not always a matter for the jury and is an appropriate question on a motion for judgment as a matter of law. *See Ross*, 2016 WL 1545138, at *14 ("Instead, courts may, on a motion to dismiss, for summary judgment, or for a directed verdict, identify a school's response as 'not clearly unreasonable' as a matter of law."). The United States Supreme Court has refused to hold that "administrators must engage in particular disciplinary action" to avoid liability. *Davis*, 526 U.S. at 648.

The Tenth Circuit has specifically held that taking steps to prevent further and future contact between a harasser and victim did not amount to deliberate indifference, even if the recipient could have taken more aggressive action. *Escue v. Northern OK College*, 450 F.3d 1146, 1155 (10th Cir. 2006). Rather, deliberate indifference occurs when there is a "complete refusal to investigate known claims." *Murrell*, 186 F.3d at 1248. In *Cubie v. Bryan Career Coll., Inc.*, 244 F. Supp. 2d 1191, 1203 (D. Kan. 2003), the district court found that the college did not act with deliberate indifference following a complaint of peer-on-peer harassment when the college met with the harasser, told him to leave the plaintiff alone, and notified the plaintiff's instructors that her break times were changed so that she would not interact with the harasser.

Just as the schools met with the aggressor and took steps to prevent future contact in *Escue* and *Cubie*, the evidence showed that PSU took similar measures, deemed reasonable and not "deliberately indifferent" in other cases. Giles and Fox worked in different buildings far apart from each other on PSU's campus. Since the only contact between Giles and Fox occurred at the time clock (along with 20 other people at night with the addition of supervisory employees during the day), steps were taken to avoid contact at the time clock, including allowing the plaintiff to clock out at a different time than Giles and ultimately, Giles' agreement to change her shift by a half hour to avoid the Foxes. PSU also placed a security camera by the time clock. Campus police were also engaged. Such actions constitute measures that are not unreasonable as a matter of law because they were designed to eliminate contact between the employees and therefore remove the opportunity for further incident.

After Fox's complaint in February 2014, Johnson took steps to interview the individuals involved and determined that everyone, including the plaintiff and her husband, should undergo sexual harassment training. Title IX does not require "flawless investigations [or] perfect

solutions" even when '[i]n hindsight, there may be other and better avenues' to explore." *Rost*, 511 F.3d at 1122 (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007)) (internal quotation marks omitted). Title IX does not require a "complete investigation," whatever that means. There is no authority for that proposition whatsoever.

Most importantly, following the investigation and training, the evidence shows Fox made no further allegations of sexual harassment. *Davis* requires that deliberate indifference, "at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *See Rost*, 511 F.3d at 1123 (citing *Davis*, 511 F.3d at 644-45). The *Davis* Court adopted a strict causation analysis and found that the defendant's investigation did not cause the plaintiff to "undergo harassment or make her liable or vulnerable to it" since no further harassment allegations were made upon conclusion of the investigation. *Id.* at 1124-25. Similarly, Fox provided no evidence of complaints of ongoing harassment following PSU's investigation and harassment training. Therefore, the investigation and training were responses that were not unreasonable as a matter of law because Fox failed to prove such responses *caused* her to undergo any further harassment or make her liable or vulnerable to it.

Pointedly, Fox attempted to argue that PSU was deliberately indifferent to allegations of events allegedly occurring off campus or involving a non-employee, Kristi McGowan. Title IX defines "program or activity" to include "all of the operations of . . . a college, university, or other postsecondary institution, or a public system of higher education." 20 U.S.C. § 1687. Thus, to be covered by Title IX, the discrimination must occur "under the university's "operations."

In *Davis*, the United States Supreme Court observed that a recipient of federal funding "cannot be directly liable for its indifference where it lacks the authority to take remedial action." *Davis*, 526 U.S. at 644; *see also Samuelson v. Oregon State Univ.*, 162 F. Supp. 3d, 1131-32 (D.

26

Or. 2016) (holding university not liable because it had no control over harasser drugging the plaintiff at an off campus party). In order to be liable, the harasser must be under the school's disciplinary authority. *Id*. Likewise, in *Rost*, the Tenth Circuit refused to find deliberate indifference when the school resource officer and the principal concluded after an investigation that a majority of the harassment occurred off school grounds and they believed they did not have responsibility or control over these incidents. *Rost*, 511 F.3d at 1121.

PSU is entitled to judgment as a matter of law because there is no basis for finding it acted with deliberate indifference with regard to anything that happened off campus and after work hours. In granting summary judgment on the retaliation claims based upon these same facts, the Court has already concluded that McGowan was not within PSU's control, finding that "no reasonable jury could find that Malle and Endicott's response when the Foxes told them that McGowan came to their house amounted to encouragement of McGowan's behavior or disregard for Plaintiff's complaint." Doc. 127, at 25. While in the Court's Memorandum and Order (Doc. 196, at 7), the Court took pains to state that "outside of work and after business hours" activity may be considered *on a Title VII* claim, the case cited by the Court, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 59-61 (1986), concerned activity by an employee toward another employee; hence, the case had a work nexus, unlike the incidents involving McGowan, a non-employee. Moreover, since no limiting instruction was given by the Court and no interrogatories given to the jury, there was no way to limit the jury's consideration of the off-campus activity which was the focus of so much of Plaintiff's case.[2]

The Court's conclusion in its October 14, 2016 Memorandum and Order (Doc. 196), that the evidence was sufficient to support deliberate indifference cannot be squared with the

---

[2] To the extent that this Court finds that a new trial is appropriate, PSU asserts that request in the alternative as contemplated by Fed. R. Civ. P. 50. PSU will be raising these issues via a timely filed separate motion as well.

evidence, the case law, or even this Court's prior opinions in this case. The first specific event referenced by the Court was the September 2013 meeting. Doc. 196, at 5. The Court acknowledged as a fact that immediately after the September 2013 meeting measures were taken to have Giles and Fox not clock in or out at the same time. Doc. 196, at 5. These are the kinds of measures specifically found sufficient in *Escue* and *Cubie.*

These cases were cited in PSU's Rule 50 motion but were not discussed or distinguished by the Court; nor were any other cases cited by the Court in support of its conclusion that PSU was deliberately indifferent. As evidence of deliberate indifference, the Court pointed to the fact that Endicott and Malle "did not report the sexual harassment" to Cindy Johnson and no further investigation of "sexual harassment" occurred at that time. Doc. 196, at 5. First, as argued above, it was not at all clear that what Fox was complaining of was in fact sexual harassment (as argued above, no actual notice of sexual harassment was given to an appropriate person for purposes of finding that an official decision was made to ignore it). The Court agreed with PSU in its decision granting summary judgment to PSU on the retaliation claims, stating that PSU did not condone Giles' actions after the September 2013 argument but rather discussed Plaintiff's complaints with her and "attempted to diffuse the situation. No reasonable jury could find that their actions [Malle's and Endicott's] amounted to condoning or encouraging Giles's behavior." Doc. 127 at 25.

The conduct which the Court found sufficient to support deliberate indifference under Title IX – allegedly failing to further investigate and report vague claims of sexual harassment – is indistinguishable from the conduct of Chief Judge David King in *Helm v. State of Kansas,* which both this Court and the Tenth Circuit found reasonable in finding that the State was entitled to the affirmative defense to Title VII provided under *Burlington/Faragher,* a much

different standard than Title IX. Doc. 127, at 23 (Title IX "is a more stringent requirement than Title VII."); *Helm v. Kansas*, 656 F.3d 1277, 1290–91 (10th Cir. 2011). In *Helm*, the Court also held that no reasonable jury could find that the plaintiff's vague and amorphous complaint, which gave no details about the alleged harasser's conduct, put the employer under notice that would require some obligation to take action. *Id.*

As support for the finding that PSU was deliberately indifferent, the Court relied upon the alleged reports to Malle and his alleged inaction and failure to discipline Giles or separate the two "when this behavior was reported." Doc. 196, at 5. Neither Fox nor her husband provided any dates upon which these reports allegedly occurred and no documentation. There were no witnesses to these alleged reports, which Malle denied. Fox provided no specifics of what she allegedly said to Malle to support that the notice was specific enough to meet Title IX requirements, although Malle is not an "appropriate person" for Title IX purposes as argued above.   As to separating the two, they worked in separate buildings as of February 2013 and only saw each other at the time clock along with 20 other custodians including Plaintiff's husband and managers during the day.

The Court's final basis for finding deliberate indifference was that Cindy Johnson "did not interview witnesses" or investigate claims made by the Foxes. Doc. 196, at 5. The Court does not specify which witnesses had knowledge and were previously identified by Martha Fox to Johnson that should have been interviewed, or what claims should have been investigated, or how any of this would have made any difference. In any event, the case law establishes that an allegedly incomplete investigation is not a basis for a finding of deliberate indifference as a matter of law, case law not distinguished by the Court in its opinion. *See, e.g., Rost*, 511 F.3d at

1122 (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007) (internal quotation marks omitted).

Further, neither Plaintiff nor the Court identified any sexual harassment by Giles or Cathy Butler Brown that occurred after Johnson's investigation. Therefore, although Plaintiff felt that Johnson should have done her investigation differently, that is meaningless under the standards stated by *Davis* and *Rost* cited above herein as Johnson's allegedly incomplete investigation did not cause Martha Fox to undergo any further sexual harassment. *See, e.g., Rost,* at 1124-25.

## CONCLUSION

PSU is entitled to judgment as a matter of law pursuant to Rule 50 because Martha Fox's Title IX employment claim is preempted by Title VII. Further, her claim is not within Title IX as she was not subjected to discrimination in an educational program at PSU, even assuming a private right of action exists under Title IX against a sovereign entity.

Fox also failed to meet the stringent requirements for a Title IX claim. Fox failed to prove that she has been denied access to an educational opportunity or benefit or that she was subjected to discrimination under any education program or activity receiving Federal financial assistance as required by 20 U.S.C. § 1681(a).

Finally, even if the Plaintiff has a claim for relief under Title IX, she failed to meet her burden to prove PSU, via an "appropriate person" – here, Cindy Johnson -- was provided actual notice of the sexual harassment prior to February 2014 or that once notice was made, PSU acted with deliberate indifference in its response. Therefore, PSU respectfully requests that this Court grant its motion for judgment as a matter of law and for any further and additional relief deemed appropriate, including a new trial.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ *M.J. Willoughby*
Whitney L. Casement, No. 25466
M.J. Willoughby, No. 14059
Assistant Attorneys General
Memorial Bldg., 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel: (785) 296-2215
Fax: (785) 291-3767
whitney.casement@ag.ks.gov
mj.willoughby@ag.ks.gov

## CERTIFICATE OF SERVICE

This is to certify that on this 1st day of November, 2016 the above and foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system with notice electronically sent to:

Amy P. Maloney                    amy@workandschoollaw.com
*Counsel for Plaintiff*

Matthew J. O'Laughlin            matt@workandschoollaw.com
*Counsel for Plaintiff*

/s/ *M.J. Willoughby*
M.J. Willoughby, No. 14059
Assistant Attorneys General

31