**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MARTHA FOX,

      Plaintiff,

      v.                                  Case No. 14-CV-2606-JAR

PITTSBURG STATE UNIVERSITY,

      Defendant.

## MEMORANDUM AND ORDER

This employment discrimination action was tried to a jury, which found in favor of Plaintiff Martha Fox on her claims of hostile work environment sexual harassment under Title VII and Title IX against Defendant Pittsburg State University ("PSU"). This matter comes before the Court on Plaintiff's Motion to Alter Judgment for Attorneys' Fees and Costs (Doc. 211). In conjunction with Plaintiff's fee application, the Court also considers Defendant's Motion to Strike Plaintiff's Reply Brief in Support of Attorneys' Fees and Costs (Doc. 243). The motions are fully briefed, and the Court is prepared to rule. As explained more fully below, Plaintiff's motion for attorneys' fees and costs is **granted in part and denied in part**. Defendant's motion to strike the reply brief is **denied**.

## I.      Background

A complete factual background of this case has been recounted in detail in both the summary judgment Order and in the Court's Order ruling on the merits-based post trial motions.[1] The Court incorporates by reference this factual matter to the extent it is relevant to the fee dispute here. This matter arose out of Fox's employment as a custodial specialist at PSU

---

[1] Docs. 127, 250.

between July 2010 and November 2015.  Plaintiff contended that she was subjected to sexual harassment from April 2012 to March 2014.  This was perpetrated by Custodial Supervisor Jana Giles and custodian Cathy Butler Brown.  Plaintiff complained to members of the custodial management, including Wanda Endicott and Kevin Malle.  However, when Plaintiff complained of the sexual harassment, Plaintiff contended that nothing was done to stop or deter the conduct.

In February 2014, Plaintiff complained to Cindy Johnson, the Director of Equal Opportunity and Affirmative Action, about the ongoing sexual harassment.  Plaintiff alleged Defendant failed to properly investigate the complaints because Johnson refused to interview witnesses.  Plaintiff contended she was told that the claim was not investigated because Johnson feared it would start a "firestorm."  Plaintiff alleged she did not receive sexual harassment training until after the alleged harassment took place.  Plaintiff alleged she suffered emotional distress damages as a result of the sexual harassment endured.  Plaintiff's Complaint alleged hostile work environment sexual harassment in violation of Title VII and Title IX and retaliation in violation of Title VII and Title IX.

Although a relatively straight-forward employment discrimination case, this matter has been vigorously defended since it was filed on December 2, 2014.[2]  Defendant produced 5,000 documents in this matter.  Defendant made an inordinate amount of discovery requests. Defendant filed two motions to compel.[3]  United States Magistrate Judge Kenneth Gale granted in part and denied in part the first motion to compel, and granted in part and denied in part the second motion to compel.[4]  Defendant offered the expert testimony of Dr. Thomas Anderson,

---

[2] Doc. 1.

[3] Docs. 66, 74.

[4] Docs. 80, 92.

and Plaintiff filed a *Daubert* motion seeking exclusion of that expert, which was granted.[5] Defendant filed a motion for summary judgment that spanned 64 pages with 484 pages of exhibits.[6] The Court granted summary judgment on the claims of retaliation under Title VII and Title IX, and denied summary judgment on the claims of hostile work environment sexual harassment under Title VII and Title IX.[7] Defendant filed a motion to reconsider the Court's exclusion of Dr. Anderson, which was denied.[8] Defendant filed a 25-page motion *in limine* containing 36 objections for the Court to rule on, and Plaintiff filed a 12-page motion *in limine*.[9] Plaintiff listed six witnesses on her final witness compared to twenty witnesses listed on Defendant's final witness list.[10] Following a 7-day jury trial, the jury rendered a verdict of $100,000 on the Title VII and $130,000 on the Title IX hostile work environment sexual harassment claims. During post-trial motion briefing, Defendant filed *two* renewed motions for judgment as a matter of law to *each* claim in contravention of the Federal Rules of Civil Procedure.[11] Defendant also filed a motion for a new trial.[12] The post-trial briefing in this matter spanned 199 pages in total without exhibits. The Court issued an order on the post-trial motions of nearly 70 pages to address the inordinate number of arguments made in the post-trial briefing.

---

[5] Docs. 104, 106.

[6] Docs. 111, 112.

[7] Doc. 127.

[8] Docs. 129, 140.

[9] Docs. 143, 150.

[10] Docs. 135, 137.

[11] Docs. 207, 209 (submitting fifty pages of briefing on the motion without the response or reply, including a jurisdictional argument raised for the first time in post-trial motions).

[12] Doc. 214 (submitting thirty pages of briefing on the motion without the response or reply).

Consistent with its incredibly abusive briefing tactics, Defendant filed *two* response briefs to Plaintiff's *one* motion for attorneys' fees and costs— one response to the request for attorneys' fees[13] and another response to the request for an award of costs.[14]  Both of these responses were disproportionately lengthy given Plaintiff's 15-page brief combining the motion for attorneys' fees and costs.  Defendant's response to the attorneys' fees motion spanned 29 pages with 73 pages of exhibits, and Defendant's response to the costs spanned 19 pages with 7 pages of exhibits.  Beyond the substantive briefing on attorneys' fees and costs, Defendant filed a motion to strike Plaintiff's reply addressing both the attorneys' fees and costs.[15]  Throughout this litigation, Defendant has filed extensive briefing in circumvention of the page limitation in Local Rule 7.1(e) without seeking leave from the Court.  Defendant's strategy when handling this matter has been litigious, vexatious, unprofessional,[16] and contrary to the spirit of the Federal Rules of Civil Procedure and the local rules of this Court.[17]  Largely for this reason, the Court grants Plaintiff an award of reasonable attorneys' fees that is higher than what would be expected in a typical case alleging similar claims.  Unfortunately, this behavior has run up substantial attorneys' fees, but Defendant has only itself to blame.

---

[13] Doc. 230.

[14] Doc. 232.

[15] Doc. 243.

[16] *See, e.g.*, Doc. 230 at 23 (categorizing Ms. Maloney's presence at trial as merely for "convenience" despite the fact that she conducted witness examination and closing arguments); Doc. 230 at 15 (implying Mr. O'Laughlin should only be credited with five years of experience because he was admitted to the Kansas bar in 2010 despite having been admitted in Missouri for nearly 14 years); Doc. 230 at 21 ("Plaintiff's counsel seeks to recover time spent driving his Mercedes."); Doc. 230-7 ("Plaintiff's open and closing seemed very much stock . . . Why did this take Matt O'Laughlin, a professed expert, so much time?").

[17] *See, e.g.*, Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

## II.     Discussion

### A.     Motion to Strike Reply

Defendant argues Plaintiff's reply brief to the motion for attorneys' fees and costs should be stricken under Federal Rule of Civil Procedure Rule 12(f).  Specifically, Defendant requests the Court strike the nine exhibits filed with the reply and new arguments made in the reply.  Rule 12(f) provides "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Plaintiff's reply is not a "pleading" that the Court may strike under Rule 12(f).[18]  Thus, this rule is not the proper procedure for a motion to strike.

In any event, Defendant does not identify and the Court cannot find new arguments in the reply.  Merely stating Plaintiff raised new arguments is insufficient and not well taken by the Court.  As to the nine exhibits attached to the reply, the Court finds these are all responsive to arguments raised in Defendant's response.[19]  There is nothing in the reply that should have been an unfair surprise to Defendant.

Further, even assuming Plaintiff's reply raised new arguments, the Court also concludes a motion to strike is not the proper procedure here.  When a reply raises a new argument, "the

---

[18] Fed. R. Civ. P. 7(a) (listing documents considered pleadings).

[19] Doc. 242-2 (revised time records to reflect time spent in 2017 in moving for attorney's fees and expenses); Doc. 242-3 (emails from Mr. O'Laughlin to Ms. Casement to respond to argument that emailing opposing counsel is not a clerical task); Doc. 242-4 (attaching declaration of Todd Thompson in a 2006 case to respond to argument regarding Defendant's use of his affidavit in this matter); Doc.242-5 (attaching declaration of Michael Downey regarding customary rate in another district court case); Doc. 242-6 (attaching Form AO133 and costs); Doc. 242-7 (affidavit of Mr. O'Laughlin regarding costs); Doc. 242-8 (email exchange from Mr. O'Laughlin to Ms. Casement regarding Cindy Johnson's testimony and subpoena in response to Defendant's argument that it was unreasonable to submit costs for her subpoena).

proper course of action for the nonmoving party to respond to such arguments is to seek leave to file a surreply."[20]  Thus, the motion to strike Plaintiff's reply is denied.

### B.  Attorneys' Fees

Plaintiff requests $278,808 in attorneys' fees for counsel Matthew O'Laughlin and Amy Maloney and legal assistant Robin Henshaw.  In Title VII and Title IX cases, a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."[21]  To obtain attorneys' fees, "a claimant must prove two elements: (1) that the claimant was the 'prevailing party' in the proceeding; and (2) that the claimant's fee request is 'reasonable.'"[22]  Defendant contests both Plaintiff's status as the prevailing party and the reasonableness of the request for attorneys' fees.

### 1.  Duty to Meet and Confer

Under District of Kansas Local Rule 54.2(a), a party who moves for statutory attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2) must initiate consultation with the other party.  Where the parties cannot come to agreement, the moving party must file a statement of consultation, which includes the date of consultation, the names of those who participated, and the results achieved.[23]  Plaintiff complied with this rule as is evidenced in Exhibit A to her motion.[24]  The parties had a telephone conference on November 7, 2016, where Mr. O'Laughlin represented Plaintiff and Ms. Casement represented Defendant.  The parties exchanged documentation and Plaintiff agreed to cut some time entries, but the parties were not able to come to an agreement.

---

[20] *N. Ala. Fabricating Co. v. Bedeschi Mid-West Conveyor Co.*, No. 16-2740, 2017 WL 1836973, at *6 (D. Kan. May 8, 2017) (citing *Sheldon v. Khanal*, No. 07-2112, 2008 WL 474262, at *4 (D. Kan. Feb. 19, 2008)).

[21] 42 U.S.C. § 2000e-5(k) (establishing attorneys' fees under Title VII); 42 U.S.C. § 1988(b) (establishing attorneys' fees under Title IX).

[22] *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1177 (10th Cir. 2010) (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998)).

[23] D. Kan. Rule 54.2(d).

[24] Doc. 212-1.

On November 8, 2016, Ms. Casement emailed on behalf of Defendant that it would not be able to stipulate to any attorneys' fees and costs. Thus, the Court is satisfied the parties attempted to meet and confer.

### 2. Prevailing Party

Defendant contends Plaintiff is not the prevailing party for purposes of attorneys' fees because Plaintiff had her two retaliation claims dismissed at summary judgment. Thus, Defendant infers that Plaintiff is not the prevailing party for 50% of her claims. A prevailing party is one that succeeds "on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit."[25] The Tenth Circuit does not hold a party is not a prevailing party merely because it failed on some claims.[26] Rather, the Tenth Circuit has held "where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."[27] However, if the plaintiff presents multiple related claims, "failure on some claims should not preclude full recovery [of attorney's fees] if [the] plaintiff achieves success on a significant, interrelated claim."[28] Where a lawsuit consists of related claims, "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."[29] For purposes of

---

[25] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted).

[26] *See Flitton*, 614 F.3d at 1177 (citation omitted).

[27] *Id.*

[28] *Id.* (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995)).

[29] *Id.* (citing *Hensley*, 461 U.S. at 440; *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998) ("Litigants should be given the breathing room to raise alternative legal grounds without fear that merely raising an alternative theory will threaten the attorney's subsequent compensation. Instead, a court should focus on 'the significance of the overall relief' that the prevailing party has won: 'The result is what matters.'")).

attorneys' fees, the Tenth Circuit holds claims are related if they are based on a common core of facts or are based on related legal theories.[30]

Although Plaintiff was unsuccessful on her retaliation claims, Plaintiff is still the prevailing party for purposes of awarding attorneys' fees. To the extent Defendant argues Plaintiff's hours should be reduced, this Court concludes Plaintiff's successful sexual harassment claims and her unsuccessful retaliation claims came from a common core of facts with related legal theories. Evidence presented in support of the sexual harassment claims was often also relevant to the claims of retaliation. As such, compensation should not be awarded on a claim-by-claim basis. Instead, the Court concentrates on the significance of the overall relief, which was a $230,000 verdict in Plaintiff's favor. This was substantial relief despite Plaintiff not requesting an exact figure for damages in the Complaint. Although Plaintiff's counsel does not need to reduce hours to reflect the dismissed retaliation claims, the Court is satisfied Plaintiff's counsel has self-reduced time working on the retaliations claim.[31]

### 3. Reasonable Attorneys' Fees

Plaintiff requests fees for approximately 798.8 hours of work by two attorneys and one legal assistant, for a total request of $278,808 in attorneys' fees. Once a party has established its

---

[30] *Id.* (citing *Jane L.*, 61 F.3d at 1512) (concluding the plaintiff's successful retaliation claim and her discrimination claim were related for purposes of attorney's fees); *see also Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1418–19 (10th Cir. 1997) (concluding the plaintiff's unsuccessful state-law claims were related to the successful Title VII hostile work environment claim); *Wirtz v. Kan. Farm Bureau Servs.*, 355 F. Supp. 2d 1190, 1204–05 (D. Kan. 2005) (consider the plaintiff's unsuccessful retaliation and harassment claims as related to successful reverse gender discrimination claim).

[31] Defendant requests the fee award be reduced by 50% because Plaintiff lost 50% of her claims. This logic is not sound given that the retaliation claims were largely intertwined with the sexual harassment claims, and the retaliation claims were dismissed at summary judgment long before many of the attorneys' fees were incurred. Further, the Court reviewed the time records and counsel self-adjusted time spent on the Complaint and summary judgment to exclude time working on the retaliation claims. *See, e.g.*, Doc. 242-2 at 1 (reducing time for drafting the Complaint, which contained the retaliation claims, from 2.3 to 1.1 and 1.9 to .9); *Id.* at 8 (reducing time researching and analyzing summary judgment from 5.7 to 4.7); *Id.* at 10 (striking time spent working on retaliation section of summary judgment response and reducing time spent editing summary judgment from 6.3 to 3.3). While this is not necessary, the Court finds it an exercise of reasonable billing judgment.

entitlement to fees as a prevailing party, the Court must determine what fee is reasonable.[32]  In determining reasonable attorneys' fees, the starting point for determining the amount of a reasonable fee is the "lodestar" figure—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[33]  If a party is seeking compensation for services of a non-lawyer, such as a legal assistant, the court must scrutinize the reported hours and suggested rates in the same manner.[34]  The party seeking an award of fees has the burden of proving both the number of hours spent and reasonableness of the hourly rates.[35]  Once this burden is met, a claimant is entitled to the presumption this lodestar amount reflects a "reasonable" fee.[36]

Once the court determines the lodestar, it must then determine whether any upward or downward adjustments should be made to the lodestar "to account for the particularities of the suit and its outcome."[37]  In assessing whether adjustments should be made, courts often consider the twelve factors set out in *Johnson v. Georgia Highway Express, Inc*., which include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) preclusion of other employment; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney's; (10) the undesirability of the case; (11) the nature and relationship of the professional relationship with the client; and (12) awards in similar cases.[38]

---

[32] *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998).

[33] *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

[34] *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir.1998)

[35] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000).

[36] *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

[37] *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (citation omitted).

[38] 488 F.2d 714, 717–19 (5th Cir. 1974).  The Tenth Circuit has approved these factors for determining reasonableness.  *Brown v. Phillips Petro. Co.*, 838 F.2d 451 (10th Cir. 1988).

It is rare that all factors are met.[39]  Although these factors may be considered, the court does not need to consider "the factors [] subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."[40]  The lodestar calculation is meant to be the primary consideration when awarding fees rather than the *Johnson* factors.[41]

### a.    Reasonable Hours

After litigating this case since 2014, Plaintiff submitted time records showing her counsel and the legal assistant spent 798.8 hours working on this matter.  Mr. O'Laughlin was the primary attorney in the matter, and he submitted records showing 593.5 hours spent from March 2014 to January 2017.[42]  Ms. Maloney, the other attorney in this matter, submitted records showing she spent 142.3 hours from November 2014 to October 2016.[43]  Ms. Henshaw, the legal assistant, spent 63 hours from September to October 2016 on matters primarily related to trial preparation.[44]

### i.    Objections

Defendant's objections to the hours expended by Plaintiff's timekeepers fall into ten categories: (1) vague, sloppy, imprecise time entries, (2) clerical work, (3) duplicative work, (4) background research, (5) travel time, (6) block billing, (7) motion to compel, (8) failure to exclude work on the retaliation claim, (9) trial preparation and attendance and (10) excessive

---

[39] *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993).

[40] *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 12 69, 1281 (D. Kan. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983)).

[41] *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1103 (10th Cir. 2010) (citing *Perdue v. Kenny A ex rel. Winn,* 559 U.S. 542 (2010)).

[42] Doc. 242-2.

[43] Doc. 212-3.

[44] Doc. 212-7.

hours.  The Court will address each category of objections before analyzing the reasonableness of the hours expended.

**Vague, Sloppy, Imprecise Time Entries**.  Defendant argues a number of Mr. O'Laughlin and Ms. Maloney's time entries are impermissibly vague.  Plaintiff's burden in an application for attorneys' fees is to "prove and establish the reasonableness of each dollar, each hour, above zero." [45]  "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures." [46]  When examining the adequacy of an attorney's billing entries, the court is primarily concerned with evaluating the propriety of the fee request based on the specific billing entries.[47] After a thorough review of Defendant's brief and the appended line-by-line objections to the billing submitted, Defendant only objected to a few entries as vague.  Defendant objects to Ms. Maloney's entry of working on the exhibit list as vague. This is not vague, as the entry undoubtedly refers to the exhibit list presented to the Court.[48]  Defendant objects to Mr. O'Laughlin's entry of "review emails from client."  This is not vague.  Undoubtedly, Mr. O'Laughlin could not have been more specific as to the content of the emails because of attorney-client privilege.  Defendant objects to Mr. O'Laughlin's entries stating he was preparing for depositions of various, individually-named witnesses.  This is not vague.  Defendant objects to time spent analyzing individual deposition testimony for purposes of opposing summary

---

[45] *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173,  1178 (10th Cir. 2010) (citation and internal quotation omitted).

[46] *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).

[47] *See Crumpacker v. Kan. Dep't of Human Res.*, 474 F.3d 747, 757 (10th Cir. 2007) ( "The law does not require the district court to reduce its fee award where it finds no difficulty in evaluating the propriety of an attorney's billing.").

[48] Doc. 135.  To the extent Defendant objects to Ms. Maloney's work on the exhibit list as clerical, this is not correct as an attorney had to choose the exhibits for trial.  The legal assistant then undoubtedly sorted and created the excel sheet that was submitted to the Court.

judgment. This is not vague.[49] Defendant objects to time spent reviewing Defendant's exhibits for objections. This is not vague, as it relates to the exhibit list Defendant submitted to the Court. Defendant objects to Mr. O'Laughlin's entries for researching and analyzing case law on Fed. R. Evid. 106 and audio recordings, harassment outside of work, relevance of employer policies, and subsequent remedial measures. These are not vague, as they relate to issues raised in Defendant's motion *in limine*. Further, entries stating that Mr. O'Laughlin worked on an opposition to Defendant's motion *in limine* and prepared for the hearing on the motion *in limine* are also not vague. This objection is overruled as there are no impermissibly vague entries in Mr. O'Laughlin or Ms. Maloney's billing statements.

*Clerical Work*. "Purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."[50] Thus, "purely clerical or secretarial tasks" should also not be billed at an attorney rate either.[51] The court must deduct "[t]asks that amount to filing, organizing files, making copies, printing, ordering file folders, organizing boxes, updating files with correspondence and pleadings, and preparing files for storage."[52] Rather, "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories and document production; compilation of statistical and financial data; checking

---

[49] Defendant cites *Case v. Unified School District No. 233* for the proposition that this time entry is similar to a disallowed time entry in the case. 157 F.3d 1243, 1252 (10th Cir. 1998). In *Case*, the court did not allow billing for an entry labeled "conference" because it was not specific. *Id.* The entries in this case referring to the analysis of depositions of individual witnesses is nothing like the word "conference." Thus, the Court finds this case easily distinguishable.

[50] *Univ. of Kan. v. Sinks*, No. 06-2341, 2009 WL 3191707, at *8 (D. Kan. Sept. 28, 2009) (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989)).

[51] *Hayes v. I.C. Sys., Inc.*, No. 14-2514-JTM, 2015 WL 506192, at *4 (D. Kan. Feb. 6, 2015).

[52] *Sinks*, 2009 WL 3191707, at * 8.

legal citations; and drafting correspondence" are properly paralegal work that may be performed under attorney supervision.[53]

As to Mr. O'Laughlin and Ms. Maloney's time that is alleged to be "clerical," the Court finds these arguments to be without merit. It is not clerical to read this Court's Order regarding a motion to compel to determine what evidence must be produced. It is not clerical to listen and note audio exhibits in preparation for trial. It is not clerical to summarize deposition testimony of a witness for purposes of trial if the attorney is examining the witness.[54] Both of these matters require a legally trained mind to determine the passages necessary to meet the elements of the underlying legal claim. It is not clerical to email opposing counsel regarding scheduling, the subject of phone conferences, and legal issues in the case.[55] It is not clerical to review and work on a juror chart. It is not clerical to email the client to set up depositions and subpoenas. It is not clerical to review Plaintiff's social media accounts to determine the postings relating to emotional state for discovery production in compliance with the Court's motion to compel order. It is not clerical to authorize and facilitate disclosure of phone records from a third party to comply with the Court's motion to compel order. It is not clerical to determine the exhibits necessary for trial for purposes of an exhibit list. It is not clerical to file a motion to file under

---

[53] *Jenkins*, 491 U.S. at 288 n.10.

[54] *See Wirtz v. Kan. Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1199 (D. Kan. 2005) ("Who summarizes depositions appears to be a matter of legal strategy, which the court will not second-guess at this stage."). Defendant argues it had a college student summarize deposition testimony. While this may be a cost-containment measure for Defendant, it is also likely that it took Mr. O'Laughlin and Ms. Maloney substantially less time to complete summarizing deposition testimony. Mr. O'Laughlin and Ms. Maloney both have significant legal training, and they can likely discern the passages in deposition testimony as necessary proof for trial.

[55] Plaintiff appended to her reply many of the objected-to emails. Doc. 242-3. The content of the emails appeared to be matters that could only be taken care of by an attorney as many required legal analysis. The Court is further persuaded these are not "clerical" tasks for legal assistant because they were sent and replied to by Ms. Casement, not a legal assistant.

seal. It is not clerical to file motions for extension of time for expert disclosures, to file a response to the motion to compel, and to file dispositive motions. [56]

As to Ms. Henshaw's hours, many appear to be purely clerical or secretarial tasks that must be deducted. In preparing the exhibits, Ms. Henshaw listed 13.5 hours of collecting, scanning, and labeling. Ms. Henshaw also prepared exhibit notebooks for 11.0 hours.[57] She prepared a scandisk for 1.5 hours. She researched video files for creating .wav version for 4.5 hours. These are purely secretarial or clerical in nature, much like printing, copying, or organizing. They are not properly compensable even at a legal assistant rate. The Court will reduce Ms. Henshaw's hours by 30.5 hours.

*Duplicative Work*. Defendant requests that Ms. Maloney's fee request be denied in *toto* as duplicative of Mr. O'Laughlin. The Tenth Circuit has cautioned that in determining the reasonableness of hours, it should look for the potential duplication of services.[58] "For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for excess time."[59] The court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required.[60]

Ms. Maloney's work on this matter can be put into two categories – (1) reviewing and editing and (2) conducting the trial as co-counsel. As to the first category—reviewing and editing—Ms. Maloney spent .4 hours editing the Complaint, .2 editing discovery, .3 editing the proposed pretrial order, .8 hours editing the response to the first motion to compel, .4 hours

---

[56] Motions for extension of time and motions for leave to file under seal are both documents the attorney signs and files with the Court. D. Kan. Rule 5.4.6, 6.1.

[57] Ms. Maloney and Mr. O'Laughlin also billed time for preparing the exhibits, so the Court presumes Ms. Henshaw was copying, printing, organizing, and binding the exhibits. These are clerical or secretarial tasks.

[58] *Case v. Unified Sch. Dist. No. 233 Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (quoting *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983)).

[59] *Id.*

[60] *Id.*

editing the response to the second motion to compel, .9 hours editing the motion to exclude the expert witness, .4 hours editing the reply to the motion to exclude, and 1.8 hours analyzing and editing the response to summary judgment. The Court does not find these hours duplicative of Mr. O'Laughlin's work. As most attorneys know, the drafting process and editing process for legal writing are different. These hours would be properly billed to a client. Therefore, to the extent Defendant objects to Ms. Maloney's editing, the Court overrules this objection and determines no reduction is necessary.

As to the second category—conducting the trial as co-counsel—Ms. Maloney spent time working on voir dire, preparing for cross examination of witnesses who were not deposed, preparing for direct examination of Rick Fox, Sandra Brown, and Blake Cameron, preparing for cross examination of Sue Anne Barnes, Michelle Sexton, Terri Centers, Kay Lynn Jiles, Claude Reno, and Joanne Britz, and preparing for closing arguments. These were all parts of the trial she presented. Upon review of the time records, Mr. O'Laughlin had 1.9 hours listed for preparing for cross examination of Terri Centers and Claude Reno, as well as several other witnesses who had not been deposed. The Court finds this duplicative of Ms. Maloney's effort and will reduce Mr. O'Laughlin's hours for 2016 by 1.9 hours.

Further, Ms. Maloney billed for the entirety of her time at trial, even when Mr. O'Laughlin was examining witnesses or presenting argument. There is no law that Ms. Maloney should not bill for time spent at the courthouse when Mr. O'Laughlin was conducting the trial. The Court notes Ms. Willoughby accompanied Ms. Casement at trial. While Defendant contends it would not have billed for Ms. Casement and Ms. Willoughby, this is a mere conjecture and not permissible argument. Ms. Maloney did not duplicate Mr. O'Laughlin's work at trial. Both counsel were active participants in the trial, including both examining witnesses, both lodging

objections, and both speaking at closing argument. It is not uncommon for an attorney to have several other attorneys at trial to take notes, listen closely to witness testimony, and help with exhibits. For this case, where Defendant listed 20 witnesses, the Court cannot fault Plaintiff for employing two counsel for trial to distribute the work. There is nothing duplicative about Ms. Maloney's presence at trial, and she was not merely meant for "convenience" as Defendant suggests. The Court overrules Defendant's objection that Ms. Maloney's fee request should be denied in *toto*.

***Background Research***. Time spent reading background material designed to familiarize an attorney with an area of law is presumptively unreasonable.[61] When counsel is inexperienced, a losing party is not obligated to pay for that counsel's legal education.[62] Hours spent by counsel on background research to familiarize themselves with the general area of law should be absorbed into the overhead of the firm.[63] The Court has reviewed the objected-to entries. Most of the research was related to specific legal argument raised in motions practice, the *in limine* motions, trial, or in conference between counsel.[64] However, there were several entries that were background research to familiarize the attorney with an area of law. For example, Mr. O'Laughlin admitted he never filed a *Daubert* motion prior to this case, so he spent time familiarizing himself with that area of law. Also, Ms. Maloney spent significant time researching Title IX in employment discrimination, which was not tied to a motion or an issue being litigated at the time it was billed. The Court has identified 11 hours in 2015 and 2.2 hours

---

[61] *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1258 (10th Cir. 2005) (citation omitted).

[62] *Id.* (citing *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202–05 (10th Cir.1986) (finding it is appropriate to reduce the hours expended due to the inexperience of an attorney which has led to overbilling)).

[63] *Case*, 157 F.3d at 1253.

[64] *Ross v. Rothstein*, No. 13-2101, 2016 WL 274878, at *8 (D. Kan. Jan. 22, 2016) (concluding research related to substantive disputed issues was recoverable).

in 2016 from Mr. O'Laughlin and .9 hours in 2014 from Ms. Maloney that are background research and must be deducted.

***Travel Time***.  Defendant argues counsel's travel time is not compensable.[65]  Travel time should not be compensated at the full hourly rate because such time is inherently unproductive.[66] "Although some attorneys customarily charge for such time at their full hourly rate, the Court believes that the most reasonable approach is to allow counsel to recover 50 percent of travel time."[67]  Ms. Maloney reduced her travel time from .5 to .2 for each day she traveled to trial.[68] Mr. O'Laughlin reduced his travel time from Kansas City to Pittsburg State University for depositions from 2.5 to 1.2, from Kansas City to Topeka for depositions from 2.4 to 1.2, and from his office to the Court from .5 to .2.  Thus, the Court is satisfied that the hours for travel time have already properly been reduced.  This objection is overruled.

***Block Billing***.  "Block billing" is the practice of lumping multiple tasks into a single entry of time such that the billing entry does not delineate how hours were allotted to specific tasks.[69]  The Tenth Circuit discourages block billing, and if the party demanding fees has submitted time records including block billing, the court can apply a general reduction to the

---

[65] Defendant cited *Thames v. Evanston Insurance Co.* for the proposition that travel time is not compensable.  However, this is an incorrect recitation of that court's ruling.  665 F. App'x 716, 721–22 (10th Cir. 2016).  Rather, *Thames* states the court may reduce hours where counsel is hired from outside the area and counsel in the city where the case is litigated are available.  *Id.* (reducing travel time for counsel traveling from Tulsa to litigate in Oklahoma City because Oklahoma City attorneys were readily available to litigate).  Here, these are counsel from Kansas City, and the case was litigated in Kansas City.

[66] *Wirtz v. Kan. Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1199 (D. Kan. 2005).

[67] *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311, 2015 WL 4920292, at *9 (D. Kan. Aug. 18, 2015) (citing *Aquilino v. Univ. of Kan.*, 109 F. Supp. 2d 1319, 1326 (D. Kan. 2000)).

[68] Defendant attached a Google map showing that the route from Mr. O'Laughlin and Ms. Maloney's office to the Court takes ten minutes by car.  Doc. 230-10.  Defendant suggests that the 30 minutes billed roundtrip was unreasonable.  However, the Court finds that Mr. O'Laughlin and Ms. Maloney were likely driving during peak hours (i.e. 8 a.m. and 5 p.m.), so it was reasonable that it took 15 minutes each way.  The reduction from .5 to .2 is proper, and it is not unreasonable.

[69] *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1214–15 (10th Cir. 2000).

requested fees.[70]  Defendant alleges block billing with regards to three entries.  "Working on

opening statements" for 2.0 hours is not prohibited block billing.  "Trial preparation: review and

revise examination outlines and opening statement" for 7.5 hours is not block billing.  "Draft

Closing Argument" for 2.0 hours and "Revisions to Closing Argument" for 1.5 hours are not

block billing.  Upon the Court's review of the billing statements, there are no entries that are

improper block billing.  This objection is overruled.

> ***Motion to Compel.***  Defendant argues Plaintiff cannot recover attorneys' fees for the time

spent on a discovery matter in which she was compelled to produce a document.  Defendant

points the Court to no authority for the proposition that time spent on unsuccessful motions are

not recoverable.  In *Garcia v. Tyson Foods, Inc.*, the Court considered whether to deduct hours

for the time the plaintiff's counsel spent drafting unsuccessful motions to compel.[71]  The Court

did not deduct the hours spent because in its discretion, it determined the motions to compel

were neither frivolous nor unnecessary.[72]  Here, Plaintiff's failure to produce the requested

documents, which led Defendant to file a motion to compel, was neither frivolous nor

unnecessary.  In fact, both motions to compel were granted in part and denied in part.[73]  The

Court will neither deduct time spent responding to the motion to compel, nor time spent

producing documents after the grant of the motion to compel.

> ***Failure to Exclude Hours Related to Retaliation Claim.***  As the Court stated above in

connection with the prevailing party analysis, the Court is satisfied that Plaintiff's counsel

reduced hours related to the previously dismissed retaliation claims although they were not

---

[70] *See Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311, 2015 WL 4920292, at * 9 (D. Kan. Aug. 18, 2015).

[71] No. 06-2198, 2012 WL 5985561, at *7 (D. Kan. Nov. 29, 2012).

[72] *Id.*; *see also Ross v. Rothstein*, No. 13-2101 , 2016 WL 274878, at *11 (D. Kan. Jan. 22, 2016) (declining to reduce hours based on an unsuccessful motion to compel and motion for a protective order where the party had a "valid and reasonable basis" for asserting the argument).

[73] Docs. 80, 92.

required to.  Based on the time records, hours were reasonably reduced in connection with preparing the Complaint and summary judgment briefs to reflect time presumably spent researching, drafting, and analyzing retaliation.  Thus, the Court overrules this objection.

***Trial Preparation and Attendance.***  Defendant makes three objections to the hours Plaintiff's counsel spent preparing for trial with no citation to authority.  First, Defendant argues Plaintiff's counsel prepared a cast of characters, master timeline, and case timeline that were not used as demonstratives at trial.  Second, Defendant argues Plaintiff prepared for witnesses that were not present at trial.  Third, Defendant argues Plaintiff's counsel should not recover for time spent at trial where only one attorney was questioning or arguing, or for time spent waiting for the verdict.  The Court finds them without merit.

First, the cast of characters, master timeline, and big picture timeline are properly billed as trial preparation.  There is no indication that these materials were ever intended as demonstrative exhibits.  It is reasonable to assume that Mr. O'Laughlin and Ms. Maloney used these for personal reasons during trial as there was a long list of witnesses, events, and dates.  It is entirely reasonable to bill a client for work product prepared in preparation for trial, so it is properly billed here.

Second, Defendant objects to Ms. Maloney preparing to cross examine Terri Centers, Claude Reno, and James Cook and Mr. O'Laughlin preparing to cross examine Terri Centers, Claude Reno, Jack Freeman, and Rob Hunt, none of whom testified at trial.  However, these witnesses were all listed on the witness list,[74] and Defendant subpoenaed Reno to testify.[75]

---

[74] Doc. 137.

[75] Doc. 179 (subpoena for Claude Reno).

Plaintiff's counsel had to prepare in case Defendant decided to call these witnesses.[76]  Once again, it is Defendant that offered the witnesses.  It cannot now object because cost was incurred to prepare for their cross-examinations.   Therefore, this trial preparation was reasonable subject to the prior reduction for cross examination preparation outlined in the Court's consideration of whether Ms. Maloney and Mr. O'Laughlin duplicated services.

Third, Defendant objects to Ms. Maloney and Mr. O'Laughlin submitting time for attending trial each day because only one counsel was questioning or arguing at a given time. Although the Court addressed this matter when considering whether Ms. Maloney's work was duplicative, the Court will briefly re-address this argument.  Both counsel were present at trial and listening to testimony.  Both counsel were taking notes and helping with exhibits.  There is no reason both counsel should not be compensated for the time spent in the courtroom as the time was productive and beneficial to the client.  Further, Defendant objects to Ms. Maloney and Mr. O'Laughlin charging for time spent waiting for the verdict.  Counsel must be present to take jury questions and wait for the jury verdict.  As the Court recalls, both Ms. Casement and Ms. Willoughby were present and waited for the jury at those times.  It appears both Ms. Maloney and Mr. O'Laughlin cut the time spent waiting for the verdict in half.  The Court finds this proper because just like travel time, waiting for the verdict is necessarily unproductive yet a part of the jury trial process.  The Court is satisfied that this is proper.  The Court overrules this objection.

***Excessive Hours.***  Defendant objects to excessive hours spent on three specific categories of tasks—(1) summary judgment, (2) discovery responses, and (3) drafting the opening statement and closing argument.  First, the hours spent on summary judgment were reasonable in light of

---

[76] Defendant argues Ms. Casement told Plaintiff's counsel at the end of each trial day what witnesses it intended to call the next day.  Expecting counsel to wait until the night before each witness's testimony to prepare is unreasonable.  This is especially so where counsel had not deposed many of the witnesses at issue.

its brevity.  Defendant objects to the approximately 17.4 hours Plaintiff's counsel spent working on responding to the statements of fact in the summary judgment motion.  The Court finds these hours entirely reasonable given the volume of Defendant's statements of fact, and the need to respond to each fact.  Plaintiff also presented 123 of her own statements of fact.  The Court determines no reduction is necessary.  Second, the 13.2 hours spent responding to, finalizing with the client, and producing discovery are entirely reasonable.  While Defendant argues that Plaintiff submitted "canned" objections and answers to discovery, there is still a significant amount of time spent determining how to answer interrogatories, determining what documents Plaintiff possesses that may be responsive to discovery requests, and crafting a thorough response.  The Court further finds this amount of time reasonable because of the volume of discovery.  Third, the 5.5 hours Mr. O'Laughlin spent drafting the opening statement and closing argument was not unreasonable.  The opening statement and closing argument were not "canned" as Defendant suggests.  The time spent preparing was reasonable.  The Court overrules this objection.

### ii.     Reasonable Hours Standard

Beyond Defendant's objections, the Court still must consider the amount of hours reasonably expended by Plaintiff's counsel.  In order for the applicant to satisfy its burden of proving the number of hours reasonably spent on the litigation, the party must submit "meticulous, contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks."[77]  A district court is justified in

---

[77] *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (quoting *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)).

reducing the reasonable number of hours if the attorney's time records are "sloppy and imprecise" and fail to document adequately how he or she utilized large blocks of time.[78]

Once the court has adequate time records before it, it must determine whether Plaintiff's counsel has exercised billing judgment with respect to the number of hours worked and billed.[79] Billing judgment consists of winnowing hours actually expended down to hours reasonably expended.[80] Hours that an attorney would not bill to his or her client cannot reasonably be billed to the adverse party.[81]

After examining the specific tasks and whether they are properly chargeable, the court should look at the hours expended on each task.[82] This determination requires the Court to consider such factors as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side, and potential duplication of services.[83] There is no requirement the court identify and justify each disallowed hour or announce what hours are permitted for each legal task.[84] Rather, "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use."[85]

*Detailed Records Kept.* As the Court explained above, it is satisfied that the time records in this matter were meticulous and contemporaneously kept as opposed to sloppy and imprecise.

---

[78] *Case v. Unified Sch. Dist. No. 233 Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995)).

[79] *Id.* at 1250.

[80] *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).

[81] *Case*, 157 F.3d at 1250.

[82] *Id.*

[83] *Id.* (quoting *Ramos v. Lamm*, 713 F.2d 546, 554(10th Cir. 1983)).

[84] *Id.*

[85] *Id.* (citing *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202–03 (10th Cir. 1986)).

Ms. Maloney and Mr. O'Laughlin submitted thorough time records detailing each task completed.[86] Ms. Henshaw also submitted time records detailing her work in the month before trial.[87] Because these are adequate time records, the Court finds no reason to reduce the hours on this basis.

*Hours Properly Chargeable.* Plaintiff's counsel has exercised a large amount of billing judgment. Defendant's counsel appended a visual aid to this motion showing Plaintiff's counsel had reduced nearly 10 percent of their total hours.[88] For example, according to Mr. O'Laughlin's time records, he deleted time spent for tasks like reviewing the EEOC investigation, emails for purposes of scheduling or administrative matters, reviewing the Court's orders on matters like summary judgment, and drafting motions for extension of time. Mr. O'Laughlin also reduced time spent on the previously dismissed retaliation claim, travel time, trial time, and time revising or editing briefs. Ms. Maloney also reduced a number of time entries for matters like emails for purpose of scheduling, drafting exhibit checklists for trial, travel time, reviewing minute entries on the docket, and meeting with Ms. Henshaw. Ms. Maloney also reduced a significant amount of time related to attending trial. The Court is satisfied Plaintiff's counsel exercised a proper amount of billing judgment.

*Hours Reasonably Expended.* The Court finds the hours spent were reasonable when viewed in the context of Defendant's litigation tactics. The Tenth Circuit has long accepted the proposition that one of the factors useful in evaluating the reasonableness of the number of attorney's hours in a fee request is "the responses necessitated by the maneuvering of the other

---

[86] Doc. 212-3; Doc. 242-2.

[87] Doc. 212-7.

[88] Doc. 230-11.

side."[89]  The Supreme Court has also recognized that the vigor of the opposing party is to be considered in the attorney's fee calculus.[90]  As outlined at the outset of this Order, Defendant has engaged in extremely abusive briefing tactics in a relatively simple employment discrimination case, which for example, included filing *two* extensive motions for judgment as a matter of law, filing *two* responses to a motion for attorneys' fees and costs, filing an extensive summary judgment motion, and filing a motion to reconsider the Court's *Daubert* order.  These filings required comprehensive and thorough responses from Plaintiff.  The Court is intimately familiar with the facts of this case, the discovery disputes, motions practice, trial, and post-trial motions.  The Court finds Defendant's overzealous defense of this litigation made Plaintiff expend substantial time, which makes the time look more reasonable, not less.[91]

When viewing the specific tasks, Plaintiff's counsel's hours were reasonable.  Plaintiff's counsel spent 58.5 hours to prepare for and take eight depositions, including the deposition of expert Dr. Anderson.[92]  Plaintiff's counsel prepared her *Daubert* motion and reply brief in 43.2 hours, which is not regularly part of prosecuting an employment discrimination case.  Plaintiff's counsel drafted her summary judgment response in 71.1 hours, despite having to respond to approximately forty pages of argument and 152 statements of fact.  Plaintiff's counsel spent around 200 hours combined to prepare for trial, including pre-trial briefing for *in limine* motions and filing objections to witnesses, exhibits, jury instructions, and voir dire.  Ms. Henshaw's

---

[89] *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998) (citing *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983)).

[90] *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (citing *Copeland v. Marshall*, 641 F.2d 880, 904 (1980)).

[91] The Court is further persuaded that the hours are reasonable because of the Court's own substantial time spent preparing orders in this matter.  For example, the Court issued a nearly 70-page order on the substantive post-trial motions.  Thus, drawing on the Court's own experience, the Court finds the hours all the more reasonable.

[92] Defendant objects to Plaintiff taking depositions of Sandra Brown and Blake Cameron because they were "friendly" witnesses.  However, Plaintiff explained these depositions were necessary to respond to summary judgment.  There was little time spent on the two depositions as well.  The Court finds it reasonable that Plaintiff's counsel would have billed Plaintiff for time expended on these depositions.

hours, subject to the reductions made by the Court above, were reasonable in the month leading up to trial preparing and attending trial.  This Court is satisfied that the case was prosecuted efficiently.

### b.    Reasonable Hourly Rate

The Court finds that the hourly rates in this matter must be reduced to be reasonable.  For Mr. O'Laughlin, Plaintiff requests an hourly rate of $350 for 2014, $ 350 for 2015, $375 for 2016, and $375 for 2017.  For Ms. Maloney, Plaintiff requests an hourly rate of $360 for 2014, $375 for 2015, and $400 for 2016.  Plaintiff also requests an hourly rate of $65 for Ms. Henshaw.

In setting the hourly rate, "the court should establish, from the information provided to it and from its own analysis of the level of performance and skill of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits, calculated as of the time the court awards fees."[93]  A reasonable hourly rate comports with rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[94]  The focus of the inquiry is on the rates of lawyers of comparable skill and experience.[95]  A district court abuses its discretion when it ignores the parties' market evidence and sets an attorney hourly rate using the rate it consistently grants.[96]  The district court may consider counsel's customary rate, but it is not conclusive evidence.[97]  The district court may also consider the quality of representation.[98]  If

---

[93] *Sussman v. Patterson*, 108 F.3d 1206, 1211 (10th Cir. 1997) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)).

[94] *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

[95] *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998).

[96] *Id.* at 1203.

[97] *Id.*; *see also Case v. Unified Sch. Dist. No. 233 Johnson Cty., Kan.*, 157 F.3d 1243, 1255 (10th Cir. 1998); *Ramos*, 713 F.2d at 555.

[98] *See Case*, 157 F.3d at 1257; *Ramos*, 713 F.2d at 555.

the court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, "use other relevant factors, including its own knowledge, to establish the rate."[99]

### i. Relevant Market

As a threshold matter, the Court must address the relevant market. Defendant argues the relevant market is Kansas City, *Kansas*, not *Missouri*. Defendant then infers Plaintiff's submissions of evidence of rates in Kansas City, Missouri are in error and should be disregarded. The relevant market is the place where the litigation occurs.[100] The case was tried in Kansas City, Kansas, but the courthouse is mere miles from the Missouri border.[101] Most of the practitioners in the district practice in both Kansas and Missouri. In fact, Ms. Maloney and Mr. O'Laughlin practice in both Kansas and Missouri, and they have an office in Kansas City, Missouri. These practitioners in the Kansas City metropolitan area do not change their rates based on whether the case is filed in Kansas City, Kansas or Kansas City, Missouri.[102] This Court finds the relevant market is the Kansas City metropolitan area, which includes Missouri and Kansas.[103] Thus, the submission of evidence relating to rates of both Kansas City, Kansas and Kansas City, Missouri are relevant.[104]

---

[99] *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (citing Case, 157 F.3d at 1257).

[100] *Erickson v. City of Topeka, Kan.*, 239 F. Supp. 2d 1202, 1209 (D. Kan. 2002).

[101] For a point of reference, the United States District Court for the Western District of Missouri Kansas City division is three miles from the United States District Court for the District of Kansas. It is seven minutes by car on the fastest route.

[102] As Defendant so aptly cites, Kansas Supreme Court Rule 1.5(a) requires that a lawyer's fee be reasonable. It would undoubtedly be unreasonable for a practitioner in the Kansas City metropolitan area to charge a client one rate for litigation in Kansas City, Missouri and another lower rate for litigation a couple of miles away in Kansas City, Kansas.

[103] *Acord Seamands v. Sears Holding Corp.*, No. 09-2054, 2011 WL 884391, at *13 n.14 (D. Kan. Mar. 11, 2011).

[104] Defendant cited numerous cases that were tried in Topeka, Kansas and Wichita, Kansas with lower hourly rates. *Wirtz v. Kan Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1203 (D. Kan. 2005) (setting hourly rate at $180 per hours for Topeka, Kansas); *Nelson v. Kansas*, No. 99-4184, 2003 WL 22871685, at *3 (D. Kan. Nov. 13, 2003) (setting hourly rate at $175 per hours for Wichita); *Godinet v. Mgmt. & Training Corp.*, 182 F. Supp. 2d 1109, 1113 (D. Kan. 2002) (setting hourly rate at between $115 and $175 in Topeka); *Erickson v. City of Topeka,*

### ii.    Plaintiff's Evidence of Reasonable Hourly Rate

The Court has before it substantial evidence from Plaintiff that her counsels' rates are in line with the prevailing market rates for lawyers of comparable skill and experience practicing in the Kansas City area. Mr. O'Laughlin and Ms. Maloney submitted affidavits outlining their experience and skill and their customary rates for services.[105] Mr. O'Laughlin has practiced law for approximately fifteen years.[106] He is admitted to practice in Missouri, Illinois, Kansas, and Washington. He has devoted most of his practice to employment litigation. Since being admitted to practice, he has tried to a verdict eight jury trials and fourteen bench trials. He has seen a number of favorable verdicts for clients, including a $350,000 verdict on a race discrimination claim under § 1981 and a $229,952 verdict in a sexual harassment claim under the Missouri Human Rights Act. He has successfully argued a number of cases on appeal as well. He has considerable publication experience. He has received several distinctions in his practice, including Super Lawyer for Employment Litigation and National Advocates Top 100 Lawyers. He submitted that he worked as an associate for two civil defense firms in Kansas City where his rates were between $225 and $250 during 2009-2010. He also became Of Counsel at Holman Schiavone where he charged an hourly rate of $350 during 2013. He started his own firm with

---

*Kan.*, 239 F. Supp. 2d 1202, 1209 (D. Kan. 2002) (setting hourly rate of $175 in Topeka). These cases are all inapplicable because they do not relate to the relevant market, i.e. *Kansas City*, and they are more than a decade old. This Court has long recognized the Kansas City area commands substantially greater hourly rates. *See, e.g., Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 790 F. Supp. 2d 1307, 1319 (D. Kan. 2011) ("The court is well aware that over the years Topeka has consistently lagged behind Kansas City and Wichita in hourly rates."); *Erickson v. City of Topeka, Kan.*, 239 F. Supp. 2d 1202, 1209 (D. Kan. 2002) ("Any assumption that the rates of attorneys in the Topeka, Kansas legal community are substantially similar to those in the Kansas City, Missouri area is unfounded.").

[105] Doc. 212-4 (affidavit of Mr. O'Laughlin); Doc. 212-5 (affidavit of Ms. Maloney).

[106] Defendant makes an argument that Mr. O'Laughlin's experience as an attorney should run from the time he was admitted to Kansas, which is 2010. Doc. 230 at 14 n.4. Defendant concludes Mr. O'Laughlin only has seven years of experience practicing in Kansas. The Court finds this argument frivolous. Mr. O'Laughlin has been a practicing attorney in Missouri since 2002. There is no reason to cut his experience as an attorney by seven years when calculating attorneys' fees because he was not admitted to practice in Kansas until 2010. Further, Title VII and Title IX are federal laws, and they do not require knowledge of Kansas-specific cases.

Ms. Maloney in 2016, and he raised his rate to $375 as a partner in the firm.  He attests that his rates are reasonable and within the range of fees customarily charged in the prevailing market for an attorney with his background and experience.

Ms. Maloney has practiced law for approximately seventeen years.  She is admitted to practice in Kansas and Missouri.  She has dedicated 95% of her practice to employment litigation.  She clerked for United States District Court Judge Fernando J. Gaitan of the United States District Court for the Western District of Missouri.  She began her career at Shook, Hardy & Bacon where she conducted numerous investigations of employment discrimination claims and counseled management on employment compliance issues.  She served as a member of the Eighth Circuit Committee on Model Civil Jury Instructions.  She has considerable publication and speaking experience on employment litigation.  She has been successful in a number of appeals.  She has tried thirteen cases to a verdict in state and federal court.  She has seen a number of favorable verdicts for clients, including a $362,000 verdict for one client.  She received the distinction of Super Lawyers for Employment Litigation and Practice and Top 100 Attorneys in Kansas and Missouri.  She has charged between $280 and $500 per hour since 2008.  After starting her own firm with Mr. O'Laughlin in 2016, she has raised her rate to $400.  She raised her non-contingency rate in 2016 from $400 to $500, which clients have paid.  She attests that her rates are reasonable and within the range of fees customarily charged in the prevailing market for an attorney with her experience and ability.

Plaintiff offers Ms. Henshaw's rate at $65 per hour. Plaintiff submits no information on the skills and experience of Ms. Henshaw.  Plaintiff submits no information submitted regarding the rate of a legal assistant with comparable skill and experience in the market.  Defendant submitted an affidavit of a practicing attorney that Kansas rates for paralegal work is between

$35 to $95, so this is a mid-range rate.[107]  The requested $65 is reasonable given the rates approved for legal assistants in other cases in this district.[108]

Beyond her counsels' own affidavits, Plaintiff submits the affidavit of Richard Ralston as to the customary rates in Kansas City.[109]  Richard Ralston is a member of the Missouri bar.[110] He was a United States Magistrate Judge in the Western District of Missouri from 1976 to 1988 where he presided over primarily civil cases.  He has been in private practice since 1988 in the Kansas City area with firms including Polsinelli, Shalton & Welte, and Armstrong Teasdale.  He started his own firm in 2009 called the Ralston Law Group LLC where he now serves as a trial attorney, mediator, and arbitrator.  Mr. Ralston has known Mr. O'Laughlin for five years, and he is familiar with his trial and appellate practice.  Mr. Ralston has known Ms. Maloney for seven years, and he is familiar with her trial and appellate practice.  Based on his more than forty years of experience and review of the affidavits submitted, Mr. Ralston attests that the hourly rates Ms. Maloney and Mr. O'Laughlin requested are fair, reasonable and comparable to hourly rates charged by other attorneys in the Kansas City, Kansas market.

Plaintiff cites a number of recent employment cases in the district with similar or higher hourly rates.  In 2012 in *Garcia v. Tyson Foods, Inc.*, the district court approved hourly rates in a Fair Labor Standards Act ("FLSA") case for attorneys ranging from $600 per hour, $400 per

---

[107] Doc. 230-5.

[108] *See, e.g.*, *Koehler v. Freightquote.com, Inc.*, No. 12-2505, 2016 WL 3743098, at *5 (D. Kan. July 13, 2016) (approving a reasonable rate of $125 for the legal assistant's time recorded); *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311, 2015 WL 4920292, at *10 (D. Kan. Aug. 18, 2015) (approving a reasonable rate of $75 for paralegal time).

[109] Doc. 212-6.

[110] Defendant argues that Mr. Ralston may only attest to Missouri rates since he is licensed and practices in Kansas City, Missouri, so he may not testify to the rates in Kansas.  This argument is without merit for three reasons.  First, the Court has found the relevant market is the Kansas City metropolitan area, including Missouri and Kansas.  Second, Mr. Ralston is familiar with both Missouri and Kansas rates as a practitioner and judge in the Kansas City metropolitan area.  Third, he attested that the rates were reasonable for Kansas City, Kansas.  Doc. 212-6 at 3.

hour, and $325 per hour in Wichita.[111]  In that case, the attorney who was approved for $400 per hour had approximately nine years of experience in 2012.[112]  In 2016 in *Koehler v. Freightquote.com, Inc.*, the district court approved an hourly rate of $400 per hour in an FLSA case.[113]  The attorney in *Koehler* was experienced in employment law cases, and he had approximately nine years of experience in 2016.[114]  In 2015 in *Barbosa v. National Beef Packing Co.*, the district court approved hourly rates in an FLSA case for $425 per hour, $325 per hour, and $250 per hour.[115]  The attorney approved for $425 rate had seventeen years of experience.[116] While these are FLSA cases and demand a somewhat different rate than Title VII and Title IX cases, they are persuasive to the Court on the heightened billing rate in the employment litigation context.

### iii.    Defendant's Evidence of Reasonable Hourly Rate

Defendant offers contrary evidence regarding the reasonable hourly rate for Mr. O'Laughlin and Ms. Maloney.  Defendant first offers the affidavit of its counsel, Ms. Casement.[117]  The Court may properly consider the rate of opposing counsel when setting reasonable hourly rates.[118]  Ms. Casement was an Assistant Attorney General in the Office of the Kansas Attorney General.  Ms. Casement did not provide evidence as to her skill or amount of experience.  Ms. Casement did not provide evidence that she regularly practices employment

---

[111] No. 06-2198, 2012 WL 5985561, at *3–4 (D. Kan. Nov. 29, 2012).

[112] *Id.*

[113] No. 12-2505, 2016 WL 3743098, at *5 (D. Kan. July 13, 2016).

[114] *Id.*

[115] No. 12-2311, 2015 WL 4920292, at *10 (D. Kan. Aug. 18, 2015).

[116] *Id.*

[117] Doc. 230-2.

[118] *See Wirtz v. Kan. Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1203 (D. Kan. 2005) (citing defense counsel's hourly rate).

litigation. Ms. Casement did not provide evidence that she practices in Kansas City, which seems unlikely given the Kansas Attorney General's Office is in Topeka. Ms. Casement attests she would charge a rate of $130 per hour as an assistant attorney general.

The Court does not find Ms. Casement's affidavit persuasive for several reasons. First, Ms. Casement is practicing in Topeka, Kansas, which typically has different rates than Kansas City.[119] Second, Ms. Casement has presented no evidence that she has similar specialized experience in employment or civil rights litigation. She is a lawyer for the State of Kansas, and she undoubtedly has a more general practice. Third, Ms. Casement presented no evidence she has similar credentials and experience to that of Ms. Maloney and Mr. O'Laughlin. She did not state the number of years she has practiced. She did not state she had ever conducted a trial before, or had a favorable jury verdict as Ms. Maloney and Mr. O'Laughlin both presented. Fourth, Ms. Casement is an attorney for the State of Kansas rather than a private practitioner competing in the marketplace.[120] There is no indication that her rate is indicative of the private market. Thus, although she presents evidence that her rate is $130 per hour, this is not persuasive as to the rate of Ms. Maloney and Mr. O'Laughlin.

Defendant offers the affidavit of David Cooper and Todd Thompson to contradict the affidavit of Mr. Ralston. David Cooper is a partner at Fisher, Patterson, Sayler, & Smith, LLP in Topeka, Kansas. He was admitted to practice in Kansas in 1994. Mr. Cooper has focused his practice on civil defense litigation, including employment law. He has practiced extensively in

---

[119]*Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 790 F. Supp. 2d 1307, 1319 (D. Kan. 2011) ("The court is well aware that over the years Topeka has consistently lagged behind Kansas City and Wichita in hourly rates."); *Erickson v. City of Topeka, Kan.*, 239 F. Supp. 2d 1202, 1209 (D. Kan. 2002) ("Any assumption that the rates of attorneys in the Topeka, Kansas legal community are substantially similar to those in the Kansas City, Missouri area is unfounded.").

[120] *Sussman v. Patterson*, 108 F.3d 1206, 1212 (10th Cir.1997) (pointing out that "[a]lthough the rate charged by the losing counsel may be relevant in determining a reasonable hourly rate, we have discounted that information where . . . the opposing counsel represents a governmental entity.").

the United States District Court for the District of Kansas, including appearing in 172 federal court cases. He admits that he is retained by liability insurers to defend the insured and governmental entities, so he historically commands a lower rate because of the certainty of payment and the volume of work. He attests that in 2014, 2015, and the first quarter of 2016, he charged an hourly rate of $225, and for the remainder of 2016, he charged an hourly rate of $250. Todd Thompson is a senior attorney at Thompson, Ramsdell, Qualseth & Warner in Lawrence, Kansas. He was admitted to practice in Kansas more than thirty years ago. Mr. Thompson's practice has been focused on civil litigation services. Mr. Thompson attests that the prevailing rate in "Topeka and northeast Kansas" is $190-$270 for 15 to 25 years experience.

The Court does not find Mr. Cooper or Mr. Thompson's affidavits probative for several reasons. First, Mr. Cooper attests to his rates in Topeka, Kansas, and Mr. Thompson attests to his rates in Lawrence and "northeast Kansas." These rates are different than the relevant market, which is Kansas City. While Mr. Thompson states the rates relate to "northeast Kansas" and Kansas City is in northeast Kansas, it is unclear that Mr. Thompson is referring to Kansas City, Kansas and Kansas City, Missouri. Second, Mr. Cooper and Mr. Thompson do not state that they specialize in employment litigation, as Ms. Maloney and Mr. O'Laughlin have attested. Rather, they refer to rates in civil litigation generally. Third, Mr. Cooper's affidavit states that his rates are lower because he is hired by insurers. His rate is not reflective of Ms. Maloney and Mr. O'Laughlin because they took this matter on contingency with no guarantee of payment. Thus, the Court is not persuaded these affidavits reflect the prevailing rate of attorneys with comparable skill and experience in Kansas City as of 2017. The Court finds these affidavits reflect lower rates than what would be reasonable for Ms. Maloney and Mr. O'Laughlin in the Kansas City market.

Defendant also appended the 2012 Kansas Bar Association ("KBA") survey.[121] The KBA survey demonstrates that the Kansas City, Kansas median rate for hourly billing is $200 and mean rate is $228. The 75th percentile in Kansas City, Kansas bill at $250 per hour and the 95th percentile bill at $390 per hour. For Kansas City, Missouri, the mean and median rate for billing is $250. The 75th percentile in Kansas City, Missouri bill at $300 per hour and the 95th percentile bill at $400 per hour. The Kansas City, Kansas and Kansas City, Missouri rates were the same or higher than the rates for the entire state of Kanas. For the State of Kansas generally, the employment field bills at a median rate of $250 and a mean rate of $264. The 75th percentile bill at $310 per hour and the 95th percentile bill at $425 per hour. These rates were higher than the average for all fields of law. Overall, the Court finds this evidence shows that the relevant market (Kansas City metropolitan area) and the field of law (employment) warrant higher rates than the average in Kansas.

Defendant cited a number of contrary cases regarding hourly rates in Kansas City for Title VII litigation.[122] The cited cases ranged in fee approval from $155 per hour to $165 per hour. While these rates are nearly half the rate requested by Plaintiff's counsel, the cases cited are all more than fifteen years old. The rates for attorneys have undoubtedly changed significantly since that period. Further, these cases do not allege that the practitioners were specialized in employment law, as Ms. Maloney and Mr. O'Laughlin are.[123] Thus, the Court finds the rates for counsel are higher than the $155 to $165 per hour Defendant cites.[124]

---

[121] Doc. 230-3. It is worth noting that these rates were calculated in 2012 and five years has passed, so the rates are undoubtedly higher given the passage of time.

[122] *Aquilino v. Univ. of Kan.*, 109 F. Supp. 2d 1319, 1325 (D. Kan. 2000); *Lintz v. Am. Gen. Fin., Inc.*, 87 F. Supp. 2d 1161, 1171 (D. Kan. 2000); *Wilder-Davis v. Bd. of Cty. Comm'rs of Johnson Cty., Kan.*, No. 98-2363, 2000 WL 1466691, at *5 (D. Kan. Aug. 8, 2000); *Lappin v. Gwartney*, No. 99-2292, 2000 WL 1532765, at *11 (D. Kan. Sept. 18, 2000).

[123] *Aquilino*, 109 F. Supp. 2d at 1325 (counsel had twenty years of experience with only 10 years in "civil rights" litigation); *Lintz*, 87 F. Supp. 2d at 1171 (counsel had seventeen years of trial experience, but he did not

### iv. Contingent Nature of Fee

The parties dispute the effect of the contingency fee arrangement on the attorneys' fee award. Defendant argues Plaintiff may only request attorneys' fees in the amount of the contingency agreement.[125] The Supreme Court has held that "[t]he attorney's fee provided for in a contingent-fee agreement is not a ceiling upon the fees recoverable under [42 U.S.C.] § 1988."[126] Although the Tenth Circuit has not yet specifically applied *Bergeron* to attorneys' fee awards in the Title VII context, the Court finds no reason the effect of a contingency agreement for the award of attorneys' fees under § 1988(b) should be treated differently under 42 U.S.C. § 2000e-5(k). Despite the contingency agreement in this matter, the Court still properly conducts a lodestar calculation.[127]

Instead of acting as a limit to a fee award, this Court considers the rate claimed by Plaintiff's counsel in the context of the financial risk Plaintiff's counsel took in prosecuting the

---

demonstrate experience or expertise in employment discrimination or analogous litigation); *Lappin*, 2000 WL 1532765, at * 11 (defendants did not object to the rates, so there was no analysis of experience of the attorney).

[124] In 2010 in *Bell v. Turner Recreation Commission*, the district court approved an hourly rate of $250 in an employment discrimination case for an attorney with thirty years of experience. No. 09-2097, 2010 WL 126189, at * 7 (D. Kan. Jan. 8, 2010). In 2015 in *Moore v. Amsted Rail Co.*, the district court approved an hourly rate of $295 in a Family and Medical Leave Act ("FMLA") retaliation and interference case for a senior associate and partner. No. 14-2409, 2015 WL 866958, at *4 (D. Kan. Mar. 2, 2015). These more recent cases demonstrate that the rate is significantly higher than the $155-$165 rate Defendant suggest.

[125] *See* Doc. 230 at 12 (hypothesizing that Plaintiff's agreement with counsel was for 40% of the verdict, so attorneys' fees should be capped at $92,000). Defendant argues Plaintiff is required to produce the contingency agreement for purposes of this motion as it is "customary." *See Erickson v. City of Topeka, Kan.*, 239 F. Supp. 2d 1202, 1207 (D. Kan. 2002) ("[P]laintiff's counsel has represented that a written fee agreement exists, but curiously has failed to provide a copy of that fee agreement to the court, as is customary in fee applications."). There is no law requiring Plaintiff to produce such an agreement. The Court is satisfied that Plaintiff and Plaintiff's counsel had a contingency fee arrangement as both Mr. O'Laughlin and Ms. Maloney provided that information in their affidavits.

[126] *Blanchard v. Bergeron*, 489 U.S. 87, 94, 96 (1989) ("We have never suggested that a different approach is to be followed in cases where the prevailing party and his (or her) attorney have executed a contingent-fee agreement").

[127] *See also Venegas v. Mitchell*, 495 U.S. 82, 87 (1990) (directing courts to use the lodestar method to calculate statutory fees even when the attorney does not bill by the hour).

case, including delayed payment and the contingency fee agreement.[128]  The contingent nature of the fee does not justify enhancement of the lodestar *after* it has been calculated.[129]  This is so because "an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar."[130]  Rather, the contingency risk should be reflected in the lodestar in the form of a higher hourly rate for the attorney skilled and experienced enough to overcome this risk.[131]  Taking account of it through an enhancement would amount to double counting.[132]  In this case, Plaintiff's counsel do not ask for an enhancement in fees based on their contingent nature.  Rather, they appropriately ask the Court to consider their contingency risk in assessing the reasonableness of the hourly rates.

### v.  Quality of Representation

Given the contentious nature of this litigation, the Court notes the outstanding quality of Plaintiff's counsel.  Plaintiff's counsel was often bombarded with what this Court considers discourteous, unprofessional, and litigious behavior.  Plaintiff's counsel acted professionally throughout this litigation despite the behavior of opposing counsel.  Further, Plaintiff's counsel impressed this Court at trial.  Based on the Court's experience with counsel, the Court finds the requested rates all the more reasonable.

---

[128] *Garcia v. Tyson Foods, Inc.*, No. 06-2198, 2012 WL 5985561, at *3–4 (D. Kan. Nov. 29, 2012).

[129] *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992).  Defendant cites *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air* for the proposition that the court may not consider contingency fee arrangements.  483 U.S. 711, 724 (1987).  However, this is not a proper recitation of the law.  Rather, *Delaware Valley* states that the lodestar is presumed to be reasonable, and enhancement for risk of nonpayment should be reserved for exceptional cases where need and justification for such enhancement are readily apparent and supported by evidence in the record.  *Id.* at 729–31.

[130] *Dague*, 505 U.S. at 562.

[131] *See id.*; *see also Garcia*, 2012 WL 5985561, at *3–4.

[132] *Dague*, 505 U.S. at 563.

### vi. Conclusion

In conclusion, the Court finds Ms. Maloney and Mr. O'Laughlin's rates to be reasonable in comparison with attorneys of similar skills and experience in the Kansas City metropolitan market. Both Ms. Maloney and Mr. O'Laughlin are experienced and specialized attorneys in employment litigation. They both attest that the rates requested are those customarily charged. As both a former judge and current attorney and mediator in the Kansas City market, Mr. Ralston attested that Ms. Maloney and Mr. O'Laughlin's rates are reasonable for the market. The rates are also in line with rates that the court has approved in other employment litigation. The hourly rate requested reflects counsel taking this on a contingency basis, which has inherent risk. Nothing Defendant submitted persuades this Court that Plaintiff's counsel charges an unreasonable rate. Thus, the hourly rates requested are reasonable.

### c. Lodestar Calculation

The following is the proper lodestar calculation, which results in a figure of **$271,114.00**.

| Timekeeper | Hours | Hours x Rates | Total |
|---|---|---|---|
| Ms. Maloney | 141.4 | 2014: .4 x $360= $144<br>2015: 4.1 x. $375=$1,537.50<br>2016: 136.9 x $400=$54,760 | $56,441.50 |
| Mr. O'Laughlin | 578.4 | 2014: 4.7 x $350= $1,645<br>2015: 168.9 x $350= $59,115<br>2016: 387.6 x $375=$145, 350<br>2017: 17.2 x $ 375= $6,450 | $212,560.00 |
| Ms. Henshaw | 32.5 | 32.5 x $65 | $2,112.50 |
|  |  |  | **$271,114.00** |

### d. Adjustment to Lodestar

As explained below, the Court finds no adjustment to the lodestar is warranted because the factors either are subsumed by the lodestar calculation or are neutral.

### i.        Time and Labor Required

This issue was adequately addressed through the lodestar calculation.

### ii.        Novelty And Difficulty of Questions Presented

The Court finds this was a straightforward case of employment discrimination under Title VII and Title IX. There was, however, a novel issue of law relating to the applicability of both Title VII and Title IX in this matter. The skill level and experience necessary to take on this matter is properly accounted for in the hourly rates requested. This factor is neutral.

### iii.        Skills Requisite to Perform the Legal Service Properly

Plaintiff's counsel regularly litigate employment discrimination cases. Plaintiff's counsel is knowledgeable about employment discrimination cases, and counsel submitted thorough and extensive briefing addressing the factual and legal issues involved in this hybrid Title IX and Title VII case. The approved hourly rate in the lodestar analysis reflects expertise. This factor is neutral.

### iv.        Preclusion of Other Employment

Plaintiff concedes this factor is not applicable. Defendant does not address this factor.

### v.        Customary Fee

This issue was adequately addressed through the lodestar calculation.

### vi.        Whether the Fee is Fixed or Contingent

This issue was adequately addressed through the lodestar calculation.

### vii.        Time Limitations Imposed

Plaintiff concedes this factor is not applicable. Defendant does not address this factor.

### viii.        Amount Involved and Results Obtained

This issue was adequately addressed through the lodestar calculation.

### ix.     Experience, Reputation, and Ability of the Attorneys

As already discussed above, Plaintiff's counsel Ms. Maloney and Mr. O'Laughlin are highly experienced in employment litigation matters. This experience and skill is reflected in the reasonable hourly rates in the Court's lodestar analysis. This factor is neutral.

### x.     Undesirability of the Case

Plaintiff argues this case was undesirable because of the damages limitations imposed. Plaintiff presented evidence of only emotional distress without physical injury. Defendant is a state entity, so punitive damages were not available. However, Plaintiff received a $230,000 jury verdict despite these limitations. The Court finds although the damages were limited, this factor is neutral.

### xi.     Nature and Length of Professional Relationship with the Client

Plaintiff's counsel present no evidence of a pre-existing attorney-client relationship with Plaintiff. The meaning of this factor, however, and its effect on the calculation of a reasonable attorneys' fee is unclear, and the courts applying this factor typically state that this particular standard is irrelevant or immaterial.[133] This factor is neutral.

### xii.     Awards in Similar Cases

The parties do not cite nor could the Court find recent Title VII or Title IX employment discrimination cases granting attorneys' fees where the case went to trial. However, the Court has outlined above a number of cases put forth by the parties establishing hourly rates. Further, the Court found a number of cases with somewhat similar hourly rates.[134] Although Plaintiff's

---

[133] *See, e.g., Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311, 2015 WL 4920292, at *12 (D. Kan. Aug. 18, 2015).

[134] *Hoffman v. Poulsen Pizza LLC*, No. 15-2640, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017) (Judge Crabtree approved hourly rates of $600, $400, and $ 450 in an FLSA case); *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1280–81 (D. Kan. 2016) (Judge Lungstrum awarding $325 for lead counsel, $350 for a firm partner, $200 for an associate, and $125 for a paralegal in a disability discrimination case); *Ross v.*

counsel is on the high side of the rate normally awarded, the Court still finds the rate and hours

reasonable.  This factor does not warrant an adjustment downward or upward.

## C.    Nontaxable Costs (Expenses)

Plaintiff also requests $7,853.72 in taxable and nontaxable costs (expenses) relating to

depositions, witness fees, expert witness fees, copies, service fees, and her filing fee.  The Court

will not address the taxable costs (copies, service fees, witness fees, deposition fees, and filing

fee), but it will address the nontaxable costs (expert witness fees).  Under Federal Rule of Civil

Procedure 54(d)(2)(A), a claim for nontaxable expenses must be made in a motion for attorneys'

---

*Rothstein*, No. 13-2101, 2016 WL 274878, at *8 (D. Kan. Jan. 22, 2016) (Judge Crabtree approving rates of $400, $315, $270, $200 for attorneys); *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *10 (D. Kan. Aug. 18, 2015) (Judge Vratil finding hourly rates of $325 to $425 for experienced attorneys, $180 for attorneys with little to no experience, and $75 for paralegals reasonable in 2015 Kansas City FLSA case); *Moore v. Amsted Rail Co.*, No. 14-2409, 2015 WL 866958, at *4 (D. Kan. Mar. 2, 2015) (Judge Melgren approving an hourly rate of $295 in a FMLA retaliation and interference case for a senior associate and partner in Kansas City); *Mr. Elec. Corp. v. Khalil*, No. 06–2414–CM, 2013 WL 5651398, at *6 (D. Kan. Oct. 16, 2013) (Judge Murguia approving a $305 per hour rate for an intellectual property attorney who was a fifth year associate at the beginning of the case but, during the seven-year history of the litigation, progressed to Counsel); *Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 790 F. Supp. 2d 1307, 1319–20 (D. Kan. 2011) (Judge Rogers concluding that the following hourly rates were at the "top end of the hourly rates in Topeka" which has "consistently lagged behind Kansas City" in hourly rates: $325 per hour for the partners; $200 for the associates; $125 for the law clerks; and $100 for the paralegals and other support staff); *Seamands v. Sears Holding Corp.*, No. 09–2054–JWL, 2011 WL 884391, at *14–16 (D. Kan. Mar. 11, 2011) (Judge Lungstrum concluding that the following hourly rates were reasonable: $400 per hour for a lawyer with more than 30 years' experience, $290 per hour for lawyers with more than 20 years' experience, $270 for a partner with 11 years' experience, $175 for associates with "lesser experience," and $90 for paralegals); *Paradigm Alliance, Inc. v. Celeritas Technologies, LLC*, No. 07-1121, 2011 WL 251452, at *5 (D. Kan. Jan. 25, 2011) (Judge Melgren applying the following rates to the Wichita market in a breach of contract action that was described as "complex and contentious": $300 for a senior partner (which was increased by 30% pursuant to the factors of Kansas Rules of Professional Conduct ("KRPC") 1.5(a)); $200 for a junior partner; $175 for a senior associate (which was increased by 25% pursuant to KRPC 1.5(a)); and $95 for a legal assistant); *Hayne v. Green Ford Sales, Inc.*, No. 09-2202, 2010 WL 2653410, at *6 (D. Kan. June 29, 2010) (Judge Lungstrum applying the following hourly rates to the Kansas City market in an action alleging fraud, breach of implied warranty of merchantability and violation of the Kansas Consumer Protection Act: $300 for a trial lawyer with 34 years experience; $180 for less experienced associate attorneys; and $95 for paralegals); *Ice Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135, 2010 WL 4683981, at *4–5 (D. Kan. Nov. 12, 2010) (Judge Robinson using the following hourly rates for the Kansas City market in a case involving misappropriation of trade secrets: $300 for equity shareholder and named principal with 28 years of experience; $250 for equity shareholder with 16 years of experience; $185 for associate with 7 years of experience; and $85 and $80 for legal assistants); *Bell v. Turner Recreation Comm'n*, No. 09-2097, 2010 WL 126189, at * 7 (D. Kan. Jan. 8, 2010) (Judge Lungstrum approved an hourly rate of $250 in Kansas City in an employment discrimination action for an attorney who had 30 years of experience); *University of Kan. v. Sinks*, No. 06-2341, 2009 WL 3191707, at *12–13 (D. Kan. Sept. 28, 2009) (Judge Robinson finding the following rates for the Kansas City market in a trademark infringement action: $315 to $300 for partners with considerable experience; $150 to $210 for associates depending upon each attorney's experience; and $75 for legal assistants).

fees.  As the Tenth Circuit has reiterated, expenses incurred in representing a client in civil rights and analogous cases should be included in the attorneys' fee award if such expenses are reasonable and "usually billed in addition to the attorney's hourly rate."[135]  The attorneys "requesting fees bear the burden of establishing the amount of compensable expenses to which they are entitled."[136]

Plaintiff seeks reimbursement of the retainer Defendant's expert Dr. Anderson required before being deposed, which was $1,500.[137]  A prevailing party may, in the court's discretion, secure a reasonable attorneys' fee, including fees expended on experts, under 42 U.S.C. § 2000e–5(k) and 42 U.S.C. § 1988.[138]  Expert witness fees are not subject to the standard witness fee in 28 U.S.C. § 1821.[139]  The deposition of Dr. Anderson was necessary to the *Daubert* motion seeking his exclusion, so the Court finds this expense reasonable.  Plaintiff is properly awarded $1,500 in expert witness fees as a part of the nontaxable costs.

The Court does not address any of the taxable costs sought at this time.  Pursuant to 28 U.S.C. § 1920, the Clerk may tax the following costs: fees of the clerk, fees for service of

---

[135] *Case v. Unified Sch. Dist. No. 233 Johnson Cty., Kan.*, 157 F.3d 1243, 1257 (10th Cir. 1998) (citing *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983)).

[136] *Id.*

[137] Doc. 242-6; 242-9.

[138] 42 U.S.C. § 2000e-5k ("[T]he court, in its discretion, may allow the prevailing party[] a reasonable attorney's fee (*including expert fees*) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."(emphasis added)); 42 U.S.C. § 1988 ("In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.").

[139] Defendant suggested that Dr. Anderson's fee should be limited to the $40 per day witness fee, without citation to statute.  The Court presumes Defendant is referring to 28 U.S.C. §1821 for such a limitation, which states:

> A witness shall be paid an attendance fee of $40 per day for each day's attendance.  A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

However, compensation of an expert witness is governed by the Federal Rules of Civil Procedure.  Under the Rules, a party may depose any person who has been identified as an expert witness, and those experts shall "unless manifest injustice would result," be compensated by the party seeking discovery at a "reasonable fee for time spent in responding to the discovery."  Fed. R. Civ. P. 26(b)(4)(A); 26(b)(4)(E).

summons and subpoena, fees for printed or electronic transcripts for use in the case, fees and disbursement for printing, fees for witnesses, fees for copies, docket fees, costs as shown on the mandate of the Court of Appeals, compensation of court-appointed experts, and compensation of court-appointed experts.[140]  As to the taxable costs included in this motion, Plaintiff, if she prevails on appeal, should file a bill of cost on a form provided by the Clerk within 30 days after (1) the expiration of time allowed for appeal of a final judgment or decree or (2) receipt by the clerk of an order terminating an action on appeal.[141]  Defendant should file within 14 days from when the bill is filed any objection to any item on the bill of cost.[142]  The clerk will consider the objections and reply and will tax costs subject to review by the Court.[143]

### 5.    Total Award

The Court has considered the lodestar calculation and the factors for adjustment of the lodestar based on the extensive submissions by both parties.  The Court finds Plaintiff's requested hours and rates are reasonable as modified by the Court.  Plaintiff is therefore awarded the following reasonable attorneys' fees and expenses: $271,114.00 in reasonable attorneys' fees, and $1,500.00 in expenses.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff Martha Fox's Motion to Alter Judgment for Attorneys' Fees and Cost (Doc. 211) is **granted in part and**

---

[140] Plaintiff requests that this Court consider the "substance" of the request over the form.  She cites case law where the Court allowed both taxable and nontaxable cost to be considered in the attorney's fee award despite a pending appeal.  *Wirtz v. Kan. Farm Bureau Servs.*, 355 F. Supp. 2d 1190, 1206 (D. Kan. 2005).  This Court declines to take this approach because it does not follow the local rules and it is the Clerk who should consider the taxable costs in the first instance.  Plaintiff appended a Form AO 133 filed with the clerk on January 10, 2017.  Doc. 242-6.  Plaintiff is directed to re-file these taxable costs in compliance with D. Kan. Local Rule 54.1.

[141] D. Kan. Rule 54.1(a)(1).

[142] *Id.* at 54.1(b)(1).

[143] *Id.* at 54.1(b)(3).

**denied in part** for a total award of $272,614.00.  The Clerk is directed to file a Second Amended Judgment to reflect this award.

 **IT IS FURTHER ORDERED** that Defendant PSU's Motion to Strike the Reply to the Motion to Alter Judgment for Attorneys' Fees and Cost (Doc. 243) is **denied**.

 **IT IS SO ORDERED.**

Dated: June 26, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
